### No. 2379
### Second Circuit Appeal

---

## T. C. JAMESON v. STANDARD OIL COMPANY OF LOUISIANA
## ELLIOTT ELECTRIC COMPANY, Intervenor

---

(June 23, 1925, Opinion and Decree)
(July 11, 1925, Rehearing Refused.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Automobiles—Par. 4, 4 (d).**

Where in an automobile collision the defendant left his side of the road and drove over to the other side without any warning, he is guilty of negligence and responsible to the plaintiff in damages.

2. Louisiana   Digest—Appeal—Par.   630;
   Damages—Par.  99.

Where the quantum of damages allowed is clearly larger than the evidence would justify, the appellate court will amend accordingly.

(Civil Code, Art. 2315.   Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

This is a damage suit for personal injuries received in an automobile collision.

There was judgment for plaintiff and defendant appealed.

Judgment reduced and affirmed.

William H. Cook, of Shreveport, attorney for plaintiff, appellee.

T. M. Milling and F. L. Hargrove, attorneys for defendant, appellant.

J. S. Atkinson, Alex F. Smith, of Shreveport, attorneys for defendant, appellant.

ODOM, J.   Plaintiff brings this suit against defendant to recover the sum of $10,726.50, in which amount he claims he has been damaged on account of injuries which he received when a light Ford truck which he was driving collided with a large Packard truck owned by defendant and operated by one of its employees named Causey.

Plaintiff alleges that he is employed by the Elliott Electric Company in the city of Shreveport and that on the 8th day of May, 1924, he was driving a light Ford truck belonging to his employer on Texas avenue in the city of Shreveport when it collided with a truck owned and operated by defendant.

He alleges that he received serious and permanent injuries on account of said collision, and especially alleges that the collision was caused solely by the gross carelessness, fault and negligence of the driver of defendant's truck.

The defendant, in answer, admitted the collision, but defends the suit on the ground that its driver was not negligent, and that if it should be found that its driver was negligent in the operation of its truck, that his negligence was not the proximate cause of the collision, but that plaintiff was grossly negligent in the operation of the truck which he was driving, and that his negligence was the proximate cause of the accident.

The District Judge rendered judgment in favor of the plaintiff and against the defendant for $3330.75.

The Elliott Electric Company, which was plaintiff's employer at the time of the accident and which owned the truck that he was driving, intervened in the suit, setting up that due to the injuries which plaintiff had received it was compelled to pay him the sum of $364.50 on account of medical and hospital bills and for time lost while he was disabled, and it joined the plaintiff in the suit, asking that there be judgment in its favor against defendant for said sum. The judgment of the District Court allowed it the sum which it claimed.

OPINION

A careful reading of the testimony in this case has convinced us that the driver of the truck belonging to defendant was grossly careless and negligent in the operation thereof.

The plaintiff was traveling along the right side of Texas avenue at a place where the said avenue is 36 feet and 5 inches wide.

At the point where the accident happened the Standard Oil Company has a station on the opposite side of the street.

There is no question but that the plaintiff was driving at a moderate rate of speed and that he was well over on the right side of the street just previous to and at the time the accident happened.

A Mr. Causey, an employee of defendant, was coming towards the city on the other side of the street in a large Packard truck. It seems that the driver of the defendant company's truck wanted to turn into the entrance leading to the company's station, and in order to do so he had to swerve to the left and come over to the other side of the street in order to make the turn. The truck which he was driving, being a large one and being very heavy, he had to make a considerable swing out into the street. His testimony is conflicting as to why he turned out into the street, for he says at one time that he had turned to the left and was going towards the other side of the street in order to make the swing into the entrance of the station on the right-hand side of the street. At another time he testified that he left his side of the street because there was an automobile parked on that side which he had to get around. Whether he left his side of the street and got over on the other side in order to make the swing into the entrance to the station, or whether he left his side of the street in order to avoid hitting the car which was parked there, we think does not matter.

But the facts are that he did leave his side of the street and get over across the middle thereof on the opposite side where the collision took place.

There were a number of witnesses who testified on the part of the plaintiff, all of whom gave versions of the accident, and all of them stated that the driver of the defendant's truck swerved over to the opposite side of the street without giving any signal or warning of his intention to make the turn.

The plaintiff's version of the accident is as follows:

He says that he and a man named Huff were going out on a job and were running on the right side of Texas avenue or the Greenwood road and that one of the Standard Oil Company's trucks was coming to town on the opposite side of the road, and just as it got opposite or about even with the alley at the far end of the Catholic Cemetery across the street,

"he crossed the street and came down my side and never gave any signal or anything to let me know that he was going to turn, and being in a short distance, cutting across, I did not have any chance to miss him."

He was asked what there was on the opposite side of the street, and he said:

"Well, there is a filling station, and I don't know what they call it but there is a place, some place, there that belongs to the Standard Oil Company. I guess it is a warehouse."

And he stated that there is a driveway leading into this place.

He stated specifically that the driver of the defendant's truck gave no signal or warning of his intention to turn.

R. J. Norton, a witness for the plaintiff, a traffic officer, stated that he did not see the accident but that he heard the crash, and he said that the little truck, that is, the truck being driven by plaintiff, was on the right-hand side of the street, to his left.

It seems that Norton was in an automobile coming towards the city behind the defendant company's truck.

He specifically states that plaintiff was on the side of the street where he should be. He says that the driver of the defendant company's truck swerved to the left and did not give any signal.

F. S. Hufft, who was on the truck with plaintiff, gave the following account of the collision:

"Well, Mr. Jameson and myself were going from Shreveport in a truck car going out on Texas avenue there by the Standard Oil station or warehouse, and there was a Standard truck—when we got almost to

him he cut diagonally across the street and Mr. Jameson hit him. That is about all I know. It was done so quick I didn't have time to think anything about it."

And further:

"It was coming towards town and suddenly swerved to the left and got in front of a Ford truck."

He states specifically that the driver of the defendant's truck gave no signal or warning before making the turn.

And on cross-examination he said, speaking of the defendant company's truck:

"It was headed right directly down the street. It was headed over on the left toward the curb, swerved over toward the left curb, and just about straightened his car out when—both trucks were about straight when they collided. Anyway he curved over to the left of the street and started like he was trying to get back to his side of the street."

W. H. Lester, another witness, stated that he was driving a car going towards town about fifteen or eighteen miles an hour and that the driver of the defendant company's truck slowed down to about ten miles an hour and made a swing to the left of the street and that about that time he heard the crash.

He was asked if the driver of the truck gave any signal or warning indicating that he was going to swerve and he said:

"No, sir, I did not know that he was going to do that at the time, and, of course, I slowed down as slow as I could, and about that time I heard the crash."

A. Y. Deloach testified that he was in the automobile with Mr. Lester.

"Coming along up behind the Standard Oil truck and we were going about eighteen miles an hour, I guess, and the truck was in ahead of us, probably seventy-five feet, and all of a sudden he just swerved over to the left, and as he did then I thought he was going to try to pass the truck, as

he was going pretty fast, couldn't say how fast, about fifteen miles, and when the truck went to the left just then I saw the other truck coming down the street, that is, the Elliott Electric Company's truck, and it went into it. The other looked like he was making a turn to go to the right side, to go in a gate or something."

Mr. Causey, who was driving the defendant company's truck, gives the following account of the collision:

"It was coming up over on the right-hand side of the street, coming to the business section of town, and I recollect I was running four or five feet from the curb, and there was a car parked ahead of me and I pulled out in the street to go around the car, and when I pulled out from around this car I saw this Elliott Electric Company's Ford truck coming down the street, and he was over to his right, and when I pulled out from the curb he pulled out too, and he come out in the middle of the street and I did too, and I pulled out to make a swing to go in the Standard warehouse there and when I pulled out he pulled out to the middle, so he began to do this way (witness illustrating with his hand) zig-zagging, and I thought maybe he was ——"

There were certain measurements made of the street and, according to these measurements and diagrams it is very evident that at the time of the collision the truck which was being driven by the plaintiff was well over on the right side of the street where it had a right to be.

All of the testimony, that introduced by plaintiff and that by the defendant, is to the effect that the driver of the defendant company's truck left his side of the street without any warning and drove over to the other side of the street where the collision took place. This, we think, was gross negligence.

Defendant urges that the plaintiff was guilty of contributory negligence in that he was driving at such a high rate of speed that he could not stop his car within a

reasonable distance and that if he had been driving at a moderate rate of speed he could have avoided the accident.

The plaintiff himself says that he was driving only about twenty miles an hour and there is no testimony that he was driving faster than that, except the testimony of Causey, the driver of the other truck; he says that plaintiff was driving at least thirty or thirty-five miles an hour.

We are not convinced that plaintiff was guilty of contributory negligence.

The accident was brought about by the carelessness of Causey in leaving his side of the street and going onto the opposite side without warning when the truck of the plaintiff was approaching.

## ON THE QUANTUM OF DAMAGES

The District Judge allowed plaintiff $3330.75, as follows:

For loss of time _____$ 330.75
Suffering and injury _____ 2500.00
Damages to nervous system_____ 500.00

Defendant made application for a new trial, which was overruled by the court; but in a written statement filed by the District Judge he says that he made an error in the amount of damages awarded plaintiff for pain and suffering. He thinks the amount that he awarded was excessive, and we think so, too.

The District Judge stated that, inasmuch as the case was going to this court on appeal, it was not necessary for him to grant a new trial and he would therefore let his judgment stand.

There does not seem to be any complaint as to the amount allowed for other items, and for that reason we think it not necessary to discuss them.

The plaintiff was not seriously injured, and we see no reason to hold that his injuries are permanent.

He says of his injuries that he broke his right hand and that his left arm was cut and that it was necessary to take nineteen or twenty-one stitches to fix it; that it was cut in four places and he thinks to the bone. He says that his knee was mashed and that his neck was hurt and that something hit his nose and made it bleed and mashed it and it was pretty sore for a few days. He was in the sanitarium for one week and one day. He says he still suffers.

Dr. M. J. Rivenbarka said that when the plaintiff reached the sanitarium he was in a shocked condition; that there was a gash on his arm about four inches long with jagged edges, and there was venus blood coming out, apparently one of the veins of the forearm was cut. He says that his recollection is that one of the flexor muscles was partially severed and one of the extensors, but not clear through; that there were several bruises about the body, also a good deal of swelling of the forearm, and that on examination he found there was a little "crepitation by movement."

It is in evidence that plaintiff received compensation from an insurance company for seven and a half weeks, and we conclude that he was probably detained from his work that long.

We think an award of $1500 for suffering and injuries is proper in this case.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended so as to read as follows: It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant for the sum of $2330.75, with 5% per annum interest thereon from date of judicial demand until paid and all costs of this suit.

It is further ordered, adjudged and decreed that the judgment in favor of Elliott Electric Company, intervenor, against the defendant, be affirmed.

Defendant to pay all costs of this suit.

## ON APPLICATION FOR REHEARING.

REYNOLDS, J. Defendant asks for a rehearing in this case on the ground that we failed to give proper weight to the testimony of N. C. Causey, the driver of defendant's truck, to the effect that T. C. Jameson, the plaintiff, was driving at from 30 to 35 miles an hour at the time of the accident; and urges that Mr. Albert P. Garland's testimony that there were skid-marks on the pavement about the center of the street where the accident occurred approximately 33 or 35 feet long, taken in connection with Mr. Morton's testimony that a Ford car going 20 miles an hour can be stopped in its own length and going 30 miles an hour can be stopped in about 35 feet, corroborates Mr. Causey's testimony that plaintiff was driving at from 30 to 35 miles an hour at the time of the accident.

If these skid-marks are circumstantial evidence supporting Mr. Causey's testimony that plaintiff at the time of the accident was driving at from 30 to 35 miles an hour, it is not sufficient to overcome the well recognized principle of law that the findings of fact of the trial judge who saw the witnesses and heard them testify and observed their manner of testifying will not be reversed unless manifestly erroneous; nor to overcome the well settled jurisprudence that he who alleges contributory negligence carried the burden of proving it—

Boutte vs. N. O. Terminal Co., 139 La. 945, 72 South. 513.

Buechner vs. City of New Orleans, 112 La. 599, 36 South. 603.

nor to overcome the positive testimony of the plaintiff, T. C. Jameson, and F. S. Huff, that plaintiff, at the time of the accident, was driving at from 18 to 22 miles an hour.

Mr. Causey testified that plaintiff was driving at from 30 to 35 miles an hour and that his car was zig zagging from the time he first saw him approaching to the time of the accident.

These two statements, in our opinion, destroy each other, for we do not think a Ford car can zig zag at the rate of 35 miles an hour without zig zagging off the street.

Causey further testified that at the time of the accident his car was standing still.

W. H. Lester, T. C. Jameson, F. S. Huff and A. Y. Deloach testify that Causey's truck was not standing still at the time of the accident. The consensus of their testimony is that at the time of the collision he was driving at from 10 to 12 miles an hour.

Hence if Causey's testimony is corroborated to any extent by that of Mr. Albert P. Garland it is flatly contradicted by the testimony of the last four above named witnesses.

Causey further testified that while his truck was standing still he saw plaintiff's car zig zagging as it approached at a rate of from 30 to 35 miles an hour and that when it glided into his truck he was not at all excited.

We do not think the driver of a moving car can accurately judge the speed of an approaching car.

Besides, Causey testified, page 62:

"Q. You do not mean to say that he was zig zagging 30 or 35 miles an hour? "A. No, sir."

For these reasons the application for rehearing is refused.