## BERGERON v. GULF STATES UTILITIES CO.

### No. 1001.

Court of Appeal of Louisiana. First Circuit.

June 30, 1932.

Cline, Plauche & Thompson, of Lake Charles, for appellant.

Pugh & Buatt, of Crowley, for appellee.

MOUTON, J.

A collision occurred between a truck belonging to plaintiff and a truck of the defendant company at the east end of a bridge which spans a gully running through the parish of Acadia.

Vincent Bergeron was driving plaintiff's truck, and E. A. Black was driving defendant's truck. Both trucks were traveling westward, defendant's truck in the rear.

Judgment was rendered in favor of plaintiff for damages to his truck, from which defendant company prosecutes this appeal.

The graveled road on which the trucks were going is sixteen feet in width; the bridge spanning the gully, fourteen feet. Plaintiff's truck was six feet wide, that of defendant, seven and three inches, their combined width being thirteen feet and three inches, making a difference of nine inches between the combined width of the two trucks, and the width of the bridge.

E. A. Black, who was driving the defendant's truck in the rear, says he blew his horn to signal his desire to pass ahead of the truck Vincent Bergeron was driving. His testimony is that Bergeron pulled his truck to his right, thus showing that he had heard the signal. This action on the part of Bergeron, defendant contends, was an acknowledgment that he had heard the horn, and was an invitation extended Black to pass ahead.

From the foregoing statement of facts, counsel for defendant say:

"That, as the body of defendant's truck did pass the front of plaintiff's truck, plaintiff's driver thinking he was in the clear and without looking turned his truck to the left, in order to keep from crashing into the railing of the bridge they were approaching, and in order to get behind the truck that he thought had passed, and follow it across the bridge which was about nine inches wider than the combined width of the two trucks; that when plaintiff's driver thus turned to the left to get behind the other truck and follow it across the bridge, he drove into the trailer that was attached to defendant's truck and hooked the front end of the Bergeron truck under the rear right end of the trailer attached to the other truck."

Basing themselves on that version of the occurrence, counsel for defendant claim exoneration from liability on the ruling of the court in White v. Kennedy et al., 17 La. App. 315, 135 So. 694, where the court said:

"Since Act No. 296 of 1928 requires driver intending to pass automobile on right to sound his horn, and requires one about to be passed, on hearing signal, to pull to right and slow down, truck driver who had given signal of intention to pass, whereupon driver of automobile had slowed down and pulled to right, had every reason to believe that automobile driver was complying with law and expecting him to pass."

Black, driver of defendant's truck, says that when he sounded his horn Bergeron went to his right, and gave him room to pass. Upon being asked if he knew that the trailer attached to his truck "had been struck or that of Mr. Bergeron had been struck," said, "It being night I did not know whether he struck me or I struck him."

Two or three employees of defendant company, who were riding on defendant's truck at the time of the collision, say that plaintiff's truck ran into the trailer of defendant's truck as they were getting on the bridge. Some of these employees say that when Bergeron turned to his left to follow defendant's truck across the bridge, he drove into the trailer, and hooked the front end of his truck under the rear right end of defendant's trailer.

Arthur Cormier, a resident of Lafayette and apparently not interested in the outcome of this suit, happened to come along that road that night. His testimony is that he saw the two trucks, then on the west side of the bridge, which the evidence shows was about seventy feet long. He says he knew the Bergeron truck but not the other, but says it was on the side of the Bergeron truck, and was on its left side; that the defendant's truck had to be backed to get by the Bergeron truck; and that Bergeron's truck "was all broken up."

If the Bergeron truck had been driven under the trailer of defendant's truck and hooked under there, as testified to by these em-

ployees of the company, when the trucks reached the west side of the bridge they would not have been side by side, requiring the backing of the defendant's truck in order that it might get by the Bergeron truck, as was testified to by Cormier, who appeared on the scene after the accident while on his way eastward to Lafayette.

Vincent Bergeron testifies that his truck was struck on the running board and fender, and not by the trailer of defendant's truck, but by its front part; that the blow was severe as it knocked his truck against the railing of the bridge on his side of the road; that he lost control of his truck and fell.

It will be noted that Cormier says that the defendant's truck was on the left side of the Bergeron truck when he saw these trucks on the west side of the bridge. As it appears that the trucks were traveling westward, and that Bergeron was on his right-hand side of the road when he entered the bridge, evidently it was the left side of his truck that was struck, which accounts for the fact that the other truck was on that side when it was seen by Cormier on the other side of the bridge.

If the Bergeron truck had been hooked under the trailer of defendant's truck, as was testified to by defendant's witnesses, the two trucks would not have been found side by side on the other side of that bridge.

The record shows that when the accident happened there was an oil derrick, well lighted, on the north side of the graveled road, and a few hundred feet from the east end of the bridge.

Fredie Alexander, witness for defendant company, says that about three hundred feet from the bridge, right by the derrick, is where Mr. Black passed ahead of the Bergeron truck.

The trailer which was attached to defendant's truck was about twenty feet long, as appears from the evidence. Hence, it may be stated with full assurance that, when Mr. Black passed ahead of Bergeron's truck at or near this well-lighted derrick, Bergeron, the driver, could not have failed to see the trailer attached to defendant's truck which Mr. Black was driving.

It is impossible to believe that under such conditions Bergeron would have followed that truck some three hundred feet from the bridge, would suddenly have turned to his left near the bridge, and would have driven his truck under the end of defendant's trailer, as contended for by counsel for defendant.

Vincent Bergeron says he never heard the sounding of defendant's horn, that he did not slacken his speed, and kept on going at about twenty-five miles an hour up to the time defendant's truck ran into him at the edge of the bridge.

Mr. Black, and other witnesses for defendant, say that Bergeron did not slow down after he had side-tracked his truck to his right. The fact is that Black says Bergeron did not slow down at all but ran "side by side" with him.

Counsel for defendant company say that Bergeron by pulling to his right extended an invitation to Black to pass ahead, and that he therefore had the right to proceed. It seems a little strange, to say the least, that after extending such an invitation Bergeron would have continued at the same rate of speed, and would have kept up a race with defendant's truck up to the bridge, and then would have turned, driving under the end of defendant's trailer.

It is hardly possible to believe that Bergeron would have been guilty of such reckless conduct after he had given the right of way to defendant's truck.

It is more rational to believe that, due to the noise these two trucks were making on that graveled road, Bergeron did not hear the sound of the horn, had not seen the other truck in his rear, continued at the same rate of speed at which he had been traveling, and that Black, attempting to pass ahead, ran recklessly into the Bergeron truck, struck it on the left side, kept up with it to the west side of the bridge, where Cormier saw it still hanging to the left side of the Bergeron truck.

A fair, careful, and complete analysis of the evidence warrants the foregoing conclusion, and the maintenance of the judgment.

Affirmed.