No. 4035

Second Circuit

---

WHITE v. KENNEDY ET AL.

---

(July 14, 1931. Opinion and Decree.)

---

Dhu Thompson, of Monroe, attorney for plaintiff, appellee.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendants, appellants.

DREW, J. Plaintiff sued for $3,732.40, alleging that on September 24, 1930, at about 6 o'clock in the afternoon, he was driving a Ford truck west from Monroe, approximately five miles from Monroe, when there was a collision between his truck and a Chevrolet car, driven by defendant; that they were both traveling westward and driving on the right-hand side of the road, when petitioner, after sounding his horn to pass defendant, turned his car to the left side of the highway, and was in the act of passing, when defendant, without any previous notice or warning, suddenly swerved his car to the left, directly in front of petitioner's truck; that he, petitioner, swerved his car to the left and left the road to avoid the collision; on account of the shortness of the turn made by defendant, he was unable to avoid the collision. He alleged negligence on the part of defendant in suddenly turning to the left, without giving the proper signal or warning, as the cause of the accident. He itemized his damage, and asked for judgment accordingly.

Petitioner further alleged that defendant carried liability insurance with the Columbia Casualty Company of New York whereby the company obligated itself to pay any damage caused by the said defendant in operating his auto, and further obligated itself to defend any suit which might be filed against him because of any injury to property or person; made said company defendant; and prayed for judgment in solido against both defendants.

The Columbia Casualty Company filed an exception of no cause of action, which was overruled by the lower court and is not pressed here. Both defendants answered, admitting that the defendant Kennedy carried liability insurance with the defendant casualty company, by which said insurance company bound itself to defend this suit and respond for limited liability, in accordance with the terms of the policy. They admit the accident and deny all other allegations of plaintiff's petition, and specially aver that defendant Kennedy, at the time and place of the accident, was driving his automobile in a prudent and lawful manner along the Dixie-Overland highway, some five or six miles from the city of Monroe, and desiring to return to Monroe, in a prudent and careful manner, after giving the proper signal, turned his automobile to cross the highway from north to south at a filling station, and at the usual turning place; and, after he had entirely cleared the concrete and the rear wheels of his car had gone on to the neutral ground and off the concrete highway at least two feet, and while driving at a very slow rate of speed, plaintiff, driving at a high and unlawful rate of speed, and going in a westerly direction, ran into the car owned and operated by defendant Kennedy after it had entirely cleared the highway on the south; and avers that all the damage, both to persons and property, was occasioned by the gross fault and negligence of plaintiff. He prays that the demands of plaintiff be rejected.

The lower court rendered judgment for plaintiff against both defendants in solido

in the sum of $1,750, with 5 per cent per annum interest from judicial demand until paid, reserving plaintiff's right to sue for damage to his truck. From this judgment defendants have appealed.

The highway on which the accident happened was the Dixie-Overland, at a point about five miles west of Monroe, and only a few feet west of a filling station. Plaintiff had been trailing defendant for a quarter of a mile at a distance of one hundred yards or more behind him. Neither was speeding, and both were traveling at a moderate rate of speed. Plaintiff decided to pass defendant, and sounded his horn when at a reasonable distance from defendant and again on nearing defendant's car, as the law requires. Defendant pulled to the right of the road and slowed down, and, when plaintiff was within about forty feet, and had pulled to the left to pass, suddenly defendant made an extra short turn to the left in an attempt to turn back towards Monroe. Defendant did not hold out his hand to signal that he was going to turn nor did he give any other signal or warning that he intended to turn to the left.

Plaintiff immediately applied his brakes, as shown by the skid marks on the pavement, and cut sharply to the left to avoid the collision. He left the pavement entirely, and the collision happened just off the pavement, the right front fender and wheel of plaintiff's car coming in contact with the left front fender and wheel of defendant's car. Defendant's car was turned around and left standing facing west, and plaintiff's car continued some thirty or forty feet and turned over in a ditch, pinning plaintiff under it and severely injuring him.

Act No. 296 of 1928 makes it the duty of one who intends to pass a car on the right to sound his horn and thereby signal his intention to pass. This the plaintiff did. It also makes it the duty of one about to be passed, upon hearing the signal, to pull to the right and slow his speed down until the rear car has passed. Therefore, if plaintiff had given the signal of his intention to pass, and defendant had slowed down and pulled to the right, plaintiff had every reason to believe that defendant was complying with the law and expecting him to pass. He then gave more speed to his car in his effort to pass, and, when defendant suddenly turned to the left, without any signal or warning, there was nothing plaintiff could do to avoid the collision. The evidence is conclusive that plaintiff gave the signal of his intention to pass and is equally as conclusive that defendant did not give any signal or warning of his intention to turn to the left.

At the time defendant turned to the left, plaintiff could not by any action of his have avoided the accident. It is clear that defendant was negligent in turning to the left without giving any warning, and his negligence was the sole proximate cause of the accident. Jameson v. Standard Oil Co., 2 La. App. 419; Succession of Brown, 2 La. App. 704; Gascon v. Rankin, 4 La. App. 269; Bonnette v. Flournoy, 9 La. App. 467, 119 So. 736; Marsh v. Singletary, 7 La. App. 436; Bloomquist v. Schenck, 14 La. App. 94, 129 So. 246.

Defendant contends that plaintiff violated the law in attempting to pass another car at a road intersection, citing section 15 of Act No. 296 of 1928, and is thereby barred from recovery. We cannot

agree with defendant's contention that the accident happened at an intersection. The evidence, we think, shows that to the west of the filling station there is a road leading up to a residence; that it is not a clearly defined road, and, as testified to by defendant's engineer witness, "no defined road there. * * * It's a road that goes through the fence, an open gate. * * * A road back of the fence. * * * There are only tracks, no defined road. Not raised up."

The evidence clearly shows that it is not such a road as is intended by the act relied on by defendants, and that one in passing this point would not notice it, unless his attention was especially called to it. However, if it could be held to be such a road as is contemplated by the act relied on by defendants, it is equally clear that the attempt of plaintiff to pass at this point was not the proximate or contributing cause of the accident. Defendant was not attempting to turn into this so-called road, neither was any car coming out of this road. Defendant was attempting to turn around in the middle of the highway, and it was his duty to give a signal of his intention and to see that the way was clear. Section 19, Act No. 296 of 1928.

Plaintiff suffered fractures of both bones of the forearm, the radius, the big bone, slightly below the middle, the ulna, about an inch and a half towards the hand. Both bones were displaced, and were not end to end on September 25, 1930. There were two attempts made to set the arm without success, and then a stretcher was placed on the arm and kept there for twenty-nine days, during which time plaintiff suffered excruciating pain and had to be kept under the influence of opiates in order to hold him in bed. The testimony of the physicians is that a perfect end to end setting cannot be had, and that the bones will be united, although there will be a displacement, one bone with the other.

This case was tried four months after the accident, and plaintiff's arm was then in a plaster cast, and the testimony is that he will have no use of his arm for at least eight months longer and maybe twelve months.

Plaintiff is a young man, twenty-four years of age, and was capable of earning from $4 to $5 per day, and has been entirely incapacitated from work for a period of at least twelve months, and will always have a knot on his arm. He expended for hospital and medical expenses, $63; doctors' bills, $106; board and expense incurred in visiting and attending doctors and hospital for treatment, $39; he paid to labor for gathering his crop, $24.40—making a total of $232.40.

Plaintiff has answered the appeal, praying that the judgment be increased. We think he is entitled to an increase, and that, for loss of earning capacity, pain and suffering, he is entitled to $2,000, and that he is entitled to the expense he was out in the sum of $232.40.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the amount awarded to plaintiff from $1,750, with 5 per cent per annum interest from judicial demand, to $2,232.40 with 5 per cent per annum interest from judicial demand until paid, and all cost of both courts; and, as so amended, the judgment of the lower court be affirmed.