**VERNON v. GILLHAM et al.**

No. 5509.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

Rehearing Denied Jan. 28, 1938.

Theus, Grisham, Davis & Leigh and J. B. Thornhill, all of Monroe, for appellants.

M. C. Redmond, of Monroe, for appellee.

TALIAFERRO, Judge:

This action in tort grows out of the accidental death of J. D. Francis, minor son of plaintiff, resulting from a collision between the light Ford truck he was driving and the Chevrolet tank truck of defendant I. B. Gillham, then being operated by his agent, John T. Melton.

The accident occurred at 8:00 o'clock a. m., June 9, 1936, immediately south of the corporate limits of the city of Monroe, La., on concrete highway No. 165, where it is crossed at right angles by what is called Formosa avenue, a passageway across an open tract of land on which is located the Louisiana Training Institute for Boys. Both vehicles were going north. The Gillham truck was making at least forty miles per hour. The Ford truck's speed was about half that rate.

For a cause of action, plaintiff alleges that the accident and its tragic results were due solely to the carelessness and negligence of said Melton in these particulars, viz.:

A. That he was driving his truck at an excessive rate of speed, in violation of express provisions of the traffic law;

B. That he approached the Ford truck too closely before attempting to pass it, and in addition, tried to pass it without there being adequate space between the vehicles.

C. That Melton sounded no horn, nor did he give any other notice of his desire or intention to pass before attempting to do so, and in other respects ignored traffic rules designed to regulate the operation of trucks on the public highways for the protection of traffic thereon. Amplifying these allegations, plaintiff further pleads that the Gillham truck was traveling at a rate of sixty or sixty-five miles per hour

when the accident occurred, and that while thus moving, it struck the Ford truck on its left side, near the driver's seat, and in some manner knocked or dragged it for seventy-five feet or more, inflicting severe injuries to young Francis, from which he soon died. It is alleged that Melton was an employee of Gillham and the Gulf Refining Company, and at the time of the accident, on a mission for them. All three, with the Employers' Liability Assurance Corporation, Ltd., alleged carrier of public liability insurance on the Chevrolet truck, were made parties defendant.

All defendants, excepting the alleged insurer, filed exceptions of no cause or right of action. These were overruled. All defendants then answered separately. The answers of Gillham and Melton are virtually identical. They deny that the accident was caused by the carelessness or negligence of Melton in any respect. Melton's freedom from negligence as a contributing cause of the collision is affirmatively alleged. They also allege that the so-called Formosa avenue is an unpaved and poorly defined private driveway, or cattle crossing, not generally used by the public. They further aver that Melton was enroute to the city of Monroe to secure a load of gasoline for Gillham, and as he entered the grounds of the Louisiana Training Institute for Boys, he observed the skeleton Ford truck, driven by Francis, some two hundred yards ahead of him; that desiring to overtake and pass said Ford truck, he first ascertained that the left side of the road ahead was free of oncoming traffic for a sufficient distance to permit such being done in perfect safety; that he gave audible and sufficient warning of his intention to pass the Ford truck by sounding his horn, and pulled over to the left of the road, which is eighteen feet wide, in order to pass it; that after he sounded the horn and pulled over to the left side of the road, the driver of the other truck pulled to his own right and reduced his speed, thereby giving Melton good reason to believe, as he did believe, that said driver had heard his warning, had seen him approaching, and was expecting him to pass; that as he approached the Ford truck, well to the left of the center line of the road, and had reached a position where the front end of his truck was even with, or almost so, the rear end of the body of the Ford truck, the driver thereof, J.

D. Francis, suddenly and without warning or signal of any kind whatever, and in violation of the traffic laws, especially rule 10, section 3 of Act No. 21 of 1932, turned sharply from his right or proper side of the road, directly across the path of the Gillham truck; that Melton immediately applied his brakes, which were in efficient working order, and swerved his vehicle sharply to his left side, as far as could be safely done, in the hope of avoiding a collision, but without success, because of the other truck's sudden movement and close proximity to him at the time. Francis was also negligent, it is alleged, because his truck was not equipped with a rear-view mirror and other safety appliances, required by law. These acts of negligence on the part of Francis are, in the alternative, pleaded in bar of plaintiff's recovery.

The insurance company was improperly joined as defendant. The Chevrolet truck was not insured by it in any manner. Therefore, the answer of this defendant, beyond denial that Gillham carried public liability insurance with it, is unimportant to the issues of the case. However, the answer is in substance the same, as regards negligence of Melton and contributory negligence of Francis, as those of Gillham and Melton. The answer of the Gulf Refining Company follows that of its codefendants, with same plea of contributory negligence as to Francis. This defendant specially denies that Melton was its agent or employee when the collision occurred, or that he was on a mission for it. It also denies that Gillham was its agent or employee, and affirms that it had no control or supervision over him or Melton while hauling, handling, or selling its products. In all respects, as regards Gillham, the allegations of the Gulf Refining Company disclose his relation to it to be that of independent contractor.

Plaintiff's demands as to the insurance company and the Gulf Refining Company were rejected. Judgment for $6,000 in solido was awarded against Melton and Gillham. They both appealed. Plaintiff also appealed from that portion of the judgment rejecting her demand against the Gulf Refining Company. She contends that as regards this defendant, there should have been a nonsuit only.

J. D. Francis, the deceased, was nineteen years old. He had been an inmate of the Louisiana Training Institute for

Boys for five years. The morning of the accident, he was assisting a superintendent of the institute in cutting hay on its grounds on the roadside a few hundred yards south of the scene of the collision. He was directed by this superintendent to drive the Ford truck (owned by the institute) up to its blacksmith shop to procure some cylinder oil with which to operate the machine cutting the hay. He was making this trip when injured. To get the cylinder oil, it was necessary that he leave the concrete highway and enter Formosa avenue on his left side.

The deceased was rendered unconscious by the impact of the vehicles and died while in this condition. Therefore, we are without his version of the facts of the accident. Melton and William Holman, age 18, an inmate of the institution, are the only other eyewitnesses to the accident. The latter was standing some eighty yards north of the intersection. The trucks were coming towards him. There is no material variance in the testimony of these witnesses as to how the collision occurred. Melton was in a better position to observe what happened and why it happened. We are impelled to the belief that he made a fair witness. His testimony tracks his answer in the case, paraphrased by us, supra. He testified that when at a safe distance from the Ford truck, he sounded the horn to warn Francis of his presence and desire to pass him, and began the move to pass him on the left side; that when a few feet below the intersection and immediately following the sounding of his horn, the Ford truck moved to its right; and that he interpreted this movement as being in response to his signal to pass. This conclusion was but a natural one, under the circumstances. We are convinced that Francis' truck did make this movement, not because he heard the sound of the horn, but because it was the preliminary movement for him to make in order to get on Formosa avenue and then drive westerly to where the cylinder oil was. The position of the vehicles after the accident, the locus of damages to each, and other physical facts about the scene, corroborate Melton's version of the collision. The right end of the front bumper and right fender of the Gillham truck struck the left front fender and wheel of the Ford truck. The latter was knocked to the right and rested on the highway a few feet above the area of the

intersection, in a wrecked condition. The Gillham truck's tires marked the concrete for several feet below the intersection, proving application of the brakes; and, after proceeding diagonally to its left for fifty feet or more north of the intersection, rested in the ditch on the road's west side.

The Ford truck had no windshield, or cab, or other superstructure to the body. The seat was in open view to persons passing it. The driver had plain view in all directions. He had but to turn his head to observe traffic conditions to the side or behind him. His truck carried no rear-view mirror; but this is unimportant, as such mirrors are only required when the view of the driver to his rear, because of the vehicle's construction or the nature or arrangement of its load, is obstructed or interfered with. Section 9 (d), Act No. 21 of 1932.

We are convinced that Francis did not extend his left arm or give other sign or signal in token of his intention to make the left-hand turn into Formosa avenue. When he began this turn, Melton was too near to avert a collision, regardless of any effort he might have or did put forth to do so.

The lower court based its judgment against defendants upon Melton's alleged violation of the following provisions of Act No. 21 of 1932, being the Highway Traffic Regulatory law, viz.:

Rule 7 (e), section 3. "The driver of a vehicle shall not, *under any circumstances,* overtake or pass another vehicle proceeding in the same direction at any steam, electric or other railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer."

Rule 4 (c), section 3. "It shall be unlawful for any person to operate or drive any motor or other vehicle upon the public roads, highways and bridges of this State, within or through any town or village not incorporated, at a greater rate of speed than twenty-five (25) miles per hour."

And plaintiff relies upon these rules of law to succeed in the case. On the other hand, defendants' counsel argue forcefully that the infraction by Francis of the following rules of the Highway Regulatory Act, even though it be conceded that Melton transgressed the sections above quoted, effectually bars recovery

by his mother, as it would him, had he survived, viz.:

Rule 9 (b), section 3. "Except as otherwise provided in this section, the driver of a vehicle * * * when intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left."

Rule 10 (a), section 3. "The driver of any vehicle upon a public road, highway or bridge of this State, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement."

Rule 10 (b), section 3. "The signal herein required shall be given either by means of the hand and arm in the ·manner herein specified, or by a mechanical or electric signal device approved by the Department. * * * Whenever the signal is given by means of the hand and arm, the driver shall indicate his· intention to start, stop or turn by extending the arm with the hand open and the back of the hand to the rear, out from and beyond the left side of the vehicle in the following manner:

"Left turn—Extended horizontally."

An "intersection" is defined by Act No. 21 of 1932, § 1 (p), as follows:

"The term 'INTERSECTION' means the area embraced within the prolongation of the lateral curb lines, or if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other."

Under this definition, there must be a crossing or joining of two or more highways to constitute an intersection. A highway is "every way or place * * * open to the use of the public, for the purpose of vehicular travel." Section 1, title 1 (n).·

We entertain serious doubt, under the testimony bearing thereon, that Formosa avenue is a "highway" within the intendment of the law, and unless it may be so characterized, its crossing of Highway No. 165, at the scene of the accident, did not thereby create an intersection within the definition quoted above. If the area embraced in the crossing is not an intersection, as thus defined, Melton had a perfect right to pass the Ford truck while in such area. The burden was on plaintiff to establish this fact. Monroe Hardware Co. v. Monroe Transfer & W. Co., La.App., 167 So. 498. But, for the purpose of a correct decision of the case, we find it unnecessary to definitely determine whether this locus is an intersection or not. We are of the opinion that Francis' own gross contributory negligence was on a parity with the negligence of Melton, and that it constitutes one of the proximate causes of the collision. The violation of a law does not, per se, as a rule, give rise to a tort action unless the act of violation is a or the proximate cause of the tort. In the present case both drivers violated the law and the act of each was a proximate cause of the accident. Arguendo, admitting that the accident occurred in an intersection, as defined by law, Melton violated the law in attempting to pass the Ford truck therein. He was also traveling at a rate of speed in excess of that allowed by law, when we consider conditions about the institution. The locus, while not in the corporate limits of the city of Monroe, is in its environs. Below and above it, along the highway, are many residences.

The trial judge, in written reasons for judgment, states that because of Melton's gross negligence, "the contributory negligence" (of Francis) "if any, fades out of the picture." In effect, this ruling places on Melton exclusively the blame for the accident, notwithstanding it was correctly found, as we have done, that Francis violated the law in making the left turn without giving timely warning or signal of his intention so to do.

In fixing responsibility for the accident, the lower court largely based its conclusions upon the difference in phraseology between the Highway Regulatory Acts of 1928 and 1932, with reference to one motor vehicle passing another in an intersection. Act No. 296 of 1928, § 15

(c), simply says that "a vehicle *shall not* overtake and pass any other vehicle proceeding in same direction * * * at any intersection of highways," etc. The 1932 Act, § 3, rule 7 (e), adds "under any circumstances" after "not" in the 1928 Act.

We are unable to discern wherein the prohibitive effect of the wording in the 1932 Act is stronger than that of the 1928 Act. If one "shall not" do a certain act, the prohibition is complete so far as language may make it so. "Under any circumstances" is impliedly covered by the positive withdrawal of the right to do the act. Certainly this change in the language of the two laws was not intended to deprive one violating the latter of the right to plead in defense of an action in damages arising therefrom the contributory or concurring negligence of his adversary, based upon a violation of a law equally positive in its prohibitory provisions. If the change in the law enhanced to any extent the degree of care required of the driver of the passing car, it does not at all follow that the measure of precaution the law demands of the driver of the car intending to make a left turn, was in any sense reduced.

The law leaves no uncertainty in prescribing the degree of care to be exercised by a driver of a motor vehicle when executing a left turn, especially in an intersection. Such a movement has been uniformly declared by the courts to be, and in fact is about the most hazardous one of which a motor vehicle is capable of performing. It should not be undertaken except under most favorable conditions, and these conditions may only be known to the operator by a proper exercise of the senses of sight and hearing. In the present case, it was possible for young Francis to have surveyed the entire surroundings by a turn of his head. He did not do this. He had not the right to assume, as apparently he did, that he could safely, though quickly, make the turn into the avenue. The results of his indiscretion and lack of care speak for themselves. And his movement to the right immediately prior to entering the intersection, though he was unconscious of the other truck's approach, from Melton's standpoint, adds to his negligence in the other respect.

The facts of the case of White v. Kennedy et al., 17 La.App. 315, 135 So. 694, 695, are quite similar to those of the present one. It was said and held therein that:

"At the time defendant turned to the left, plaintiff could not by any action of his have avoided the accident. It is clear that defendant was negligent in turning to the left without giving any warning, and his negligence was the sole proximate cause of the accident. Jameson v. Standard Oil Co., 2 La.App. 419; Succession of Brown, 2 La.App. 704; Gascon v. Rankin, 4 La.App. 269; Bonnette v. Flournoy, 9 La.App. 467, 119 So. 736; Marsh v. Singletary, 7 La.App. 436; Bloomquist v. Schenck, 14 La.App. 94, 129 So. 246."

In Brown v. Perkins et al., La.App., 144 So. 176, this court held:

"Truck driver turning left without seeing nearly overtaking automobile, or giving warning signal which was seen, held grossly negligent (Act No. 296 of 1928, §§ 14, 19 (a), 47)."

These cases but reaffirm an unbroken line of cases extending back to the time motor vehicles were first generally used as a means of travel on the streets and highways. The list could be extended to cover scores. The more recent case of Monroe Hardware Company v. Monroe Transfer & Warehouse Company, La. App., 167 So. 498, decided by this court, also follows said line of decisions.

The exceptions of no cause or right of action are directed against the absence from plaintiff's petition of appropriate allegations disclosing her exclusive right to sue for and recover all damages resulting from the death of her son. We learn from the record that the father is dead, but the petition does not so declare. Like exceptions were upheld in Smith v. Monroe Grocery Company, La. App., 171 So. 167, and case remanded to allow amendment. However, in the present case, we find this unnecessary since plaintiff's demands will be rejected.

For the reasons herein assigned, the judgment against the Gulf Refining Company appealed from by plaintiff is affirmed, and for said reasons, the judgment against Gillham and Melton, appealed from is reversed, annulled, and set aside, and plaintiff's demands rejected at her cost.