**FIELDS v. OWENS et al.**

No. 5807.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Theus, Grisham, Davis & Leigh, of Monroe, for defendants-appellants-appellees.

Dhu Thompson, of Monroe, for plaintiff-appellant-appellee.

HAMITER, Judge.

A Chevrolet truck with attached trailer, of five ton capacity, crashed into a Ford sedan at the intersection of Cypress and Slack streets in the City of West Monroe, Louisiana, on March 18, 1937. The truck belonged to Raymond Heard, Inc., and was operated at the time by an employee of that company, J. D. Owens. Its insurer was the Employers Liability Assurance Corporation, Ltd. Plaintiff, Howard M. Fields, owned and was driving the above

mentioned Ford sedan. With him on the front seat was his minor daughter, Lela Fields, while one Charles Feazel, another minor, occupied the rear seat.

The defendants in this proceeding are J. D. Owens, Raymond Heard, Inc., and the above named insurer. Plaintiff sues in his individual capacity and for the use and benefit of his said minor daughter, seeking recovery for damages allegedly sustained by each in the collision.

The individual claim covers personal injuries, property loss, and medical, hospital and other expenses, while that on behalf of his daughter is for personal injuries which are itemized as follows:

| | |
|---|---|
| Shock, mental pain and anguish.. | $2,000.00 |
| Pain and suffering............. | 2,000.00 |
| Cuts and injuries to her right leg, knee, left hip, face, chin and head and disfigurement of her face and head and mortification and embarrassment resulting from the marks and scars resulting from said injuries..... | 2,000.00 |
| Total ................... | $6,000.00 |

Negligence on the part of the truck driver, Owens, is charged by plaintiff as the sole and proximate cause of the accident.

Defendants admit that Owens was acting within the scope and course of his employment but deny that he was in any manner negligent in the operation of the truck. They attribute negligence to plaintiff and assert that he was solely responsible for the mishap. Alternatively, they plead contributory negligence of plaintiff and his daughter.

A solidary judgment against defendants was rendered in favor of plaintiff for and on behalf of his minor daughter in the sum of $1,000. His individual demands were rejected.

Appeals were perfected by plaintiff and defendants.

Cypress street, in the vicinity of the scene of the accident, extends in a northwesterly and southwesterly direction, is straight, and forms a part of U. S. Highway 80. For the purpose of this discussion we shall treat it as running north and south. It is a main arterial thoroughfare and possesses a paved surface 18 feet in width. Slack street intersects Cypress at approximately right angles and runs in an easterly and westerly direction.

A building used by one C. E. Feazel as a combination grocery store and filling station, is situated on the northwest corner of the intersection. Attached to this building on its east or Cypress street side is a 14-foot shed. The eastern edge of this shed is approximately 17 feet west of the west line of Cypress street. The south side of the building is about 27 feet north of the north line of Slack street.

During the late afternoon of the aforementioned date, estimated at about five o'clock, plaintiff was driving his Ford sedan along Cypress street in a northerly direction at a speed of approximately 20 miles an hour. He lived on Slack street, west of Cypress, and his immediate destination was his home. On nearing that street he slowed his machine to ten or twelve miles per hour, with the view and purpose of making a left turn thereon.

In the rear of the sedan, and likewise proceeding towards the north, was the five-ton Chevrolet truck and trailer. It was loaded with 50 sacks of sugar weighing 100 pounds each, and 50 sacks of lima beans. The cargo was being transported from West Monroe to the warehouse of Raymond Heard, Inc., in Ruston. The truck, previous to the accident, was employing a speed exceeding that of the sedan and was gaining on it.

At or about the south line of Slack street where it crosses Cypress, the truck ran into plaintiff's car. The latter was turned on its right side with its front pointing almost in the direction from which it came, and, while lying in that position, was pushed by the truck in a northwesterly direction, at an angle of about 45 degrees to the highway, to and into the aforedescribed filling station and grocery store. The station's gasoline pump and one of the posts supporting the shed were knocked down by the sedan, and the latter's top was crushed as it struck said post or pump. A distance of from 60 to 70 feet was traveled by the vehicles after the impact occurred.

Plaintiff's version of the accident is given in the following paragraph of his counsel's brief: "Plaintiff drove his ford car north along Cypress street at about twenty miles per hour until he reached a point about one hundred forty feet south of the south edge of the intersection. He then slowed his car down to approximately twelve miles per hour and gave a signal for a left turn into Slack street and pro-

ceeded to the intersection with his hand extending horizontally until the intersection had been reached and just as he with-drew his hand with a view to making the left turn into Slack street he was hit by the grocery truck."

It is his further contention that the front end of the truck struck his car directly and squarely in its rear while both machines were on the right side of the street and before a left turn was commenced by him.

Owens, the truck driver, gives the following testimony:

"Q. After unloading, you went to the Commercial Transportation Company and got a load? A. Yes, sir; fifty sacks of sugar, 100 pound sacks, and 50 sacks of baby lima beans, and I went out Cypress street, heading out of West Monroe, going to Ruston and some few blocks before I got to where the accident happened I noticed a model A Ford sedan in front of me; we were gradually gaining on it. I was driving about twenty five miles an hour and had gotten up in about seventy five or eighty feet of it and I noticed the stop light come on. I got up a little closer and saw the stop light was still on but he wasn't giving any signal at that time that he was going to turn so I started to blowing my horn * * * and they hadn't given any signal and were bearing over to the extreme right of the drive * * the drive over here rather that is the right hand side of the road * * * I drove over to the left still blowing my horn and started around and just as I got almost even with my front wheels even with his rear wheels, he pulled to the left at an angle in front of me."

He, Owens, further testifies that the impact occurred at a point just left of the center of the pavement, and that the front part of his vehicle struck the sedan on or about its left rear fender.

The oral proof relating to many of the important details connected with the collision is exceedingly conflicting; so much so that if we were compelled to rely entirely on it our conclusions of fact would be attended with much doubt on our part. However, when the physical facts that the record discloses are considered in connection therewith; we are satisfied that the accident happened in the manner which we shall now describe.

The truck was traveling at a speed much in excess of 25 miles an hour. The distance that plaintiff's car was pushed after the collision and the damage resulting on its contacting the filling station are indicative of this conclusion. The sedan was not pursuing a straight course on the right side of the street on the occurrence of the impact; for if it had been, and the truck had struck it squarely on the rear as plaintiff contends, such lead machine would have traveled straight forward instead of assuming the position and following the path that it did. It was at the time making a left turn in front of the truck with its rear near the center of Cypress street. The truck, which was attempting to pass, struck said rear end an angling blow, causing the sedan to turn on its right side and to front in a southwesterly direction. According to the photographs in the record, its left rear wheel and fender sustained little damage, if any, while the right rear wheel and fender were almost demolished. Also, the appearance of the back of the body, which was mashed towards the right, justifies the conclusion that the blow came from an angle.

■ The driver of the truck was grossly negligent in his operation in several respects. He was proceeding along a much traveled street of an incorporated city, at a speed in excess of 25 miles an hour, in a commercially employed and loaded vehicle of an actual gross weight exceeding 6,000 pounds. This was violative of the hereafter quoted provisions of a statute of Louisiana and of an ordinance of the City of West Monroe. Section 3, Rule 4 (c) (2) of Act No. 21 of 1932, reads: "It shall be unlawful to operate upon said public highways motor vehicles transporting property in commerce, of either a registered or actual Gross Weight, with or without load, of over six thousand (6000) pounds at a rate of speed in excess of thirty-five (35) miles per hour, or within the corporate limits of any incorporated city or any town or village not incorporated, at a rate of speed in excess of fifteen (15) miles per hour."; and section 21 of Ordinance No. 615 of the aforementioned municipality, states: "Be it further ordained, etc., that it shall be unlawful for any person to drive or operate any truck, or any commercial vehicle designed for the transportation of property, merchandise, on any street or alley in the Town of West Monroe, Louisiana, at a greater rate of speed than fifteen (15) miles per hour."

Furthermore, by attempting to pass the sedan at the intersection the truck driver

disregarded Section 3, Rule 7 (e) of said Act No. 21 of 1932, which is: "The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at any steam, electric or other railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer."

According to the jurisprudence of this state, a motorist's violation of the provisions of a traffic regulatory statute or ordinance constitutes negligence per se. Owens was, therefore, negligent; and his negligence, we think, is actionable because it proximately caused the unfortunate occurrence that forms the basis of this controversy.

The truck driver had knowledge of plaintiff's intention of performing some vehicular maneuver at or near the intersection of Cypress and Slack streets. According to his own statement, which is quoted above, he noticed the flashing of the stop light on the rear of the sedan. On observing that warning a strict legal duty devolved upon him to reduce the speed of his machine, bring it under complete control, and not attempt the passing until he was certain that the lead car would not turn in front of him at or in the intersection. This is true, even if plaintiff did not give a timely hand signal as said truck driver testifies. The failure to discharge the mentioned duty was at least partially responsible for the collision.

We are also of the opinion that plaintiff was negligent in his driving, and that his negligence concurred with that of Owens and likewise contributed to the accident.

It is well established that a motorist intending to make a left turn at an intersection on a much traveled street must first ascertain by proper observation that the maneuver may safely be executed, and then proceed cautiously and carefully.

This court said in Lewis v. Gulf Refining Company, 7 La.App. 499, that: "Under all the rules and practices, aside from any statutory regulations, the driver of a motor vehicle on a much travelled street, as this was, who desires to make a left turn across the street, must be particularly careful and on the alert for cars meeting or overtaking his, and must not make such turn until he is sure the way is open. It is a particularly dangerous and hazardous move to make, and he must use the greatest precaution."

The doctrine announced in the above decision was reaffirmed in Payne v. Prestridge, 16 La.App. 479, 133 So. 512.

In the more recent case of Vernon v. Gillham et al., La.App., 179 So. 476, 480, we made the following observation: "The law leaves no uncertainty in prescribing the degree of care to be exercised by a driver of a motor vehicle when executing a left turn, especially in an intersection. Such a movement has been uniformly declared by the courts to be, and in fact is about the most hazardous one of which a motor vehicle is capable of performing. It should not be undertaken except under most favorable conditions, and these conditions may only be known to the operator by a proper exercise of the senses of sight and hearing. In the present case, it was possible for young Francis to have surveyed the entire surroundings by a turn of his head. He did not do this. He had not the right to assume, as apparently he did, that he could safely, though quickly, make the turn into the avenue. The results of his indiscretion and lack of care speak for themselves. And his movement to the right immediately prior to entering the intersection, though he was unconscious of the other truck's approach, from Melton's standpoint, adds to his negligence in the other respect."

It is our opinion that plaintiff did not employ the care, caution and prudence in attempting his left turn that the law required of him, and such failure, which constituted negligence, was a proximate cause of the collision. This conclusion is reached even though it be conceded that he gave the hand signal that his testimony describes. The truck was in close proximity to his machine immediately prior to the commencement of the turn. If he actually knew of its presence there he was greatly at fault in venturing into its path. On the other hand, if he did not have that knowledge, the fault lay in the breach of his duty to look and observe. In all events, he is charged with seeing that which he should have seen. Possessing that knowledge, whether actual or constructive, it was incumbent on him to refrain from performing his acts of negligence that concurred with those of the truck driver to create the perilous situation and unfortunate accident that this cause concerns.

Defendants pleaded, through appropriate allegations in their answer, contributory negligence on the part of plaintiff's minor daughter who was riding on the front,

seat of the sedan. This asserted negligence, however, is not now urged; for in their counsel's brief it is stated, "Should the court view the case, as we have mentioned, that is to say that both Owens and Fields were negligent, then we must admit that there should be some recovery on the part of the minor, Lela Fields."

The referred to daughter was 14 years of age when the accident happened. After being removed from the wrecked automobile, she was hurried to a sanitarium in an ambulance. There she was examined and X-rayed. No injuries were disclosed by the photographs, but it was determined from the physical examination that she had suffered numerous cuts, bruises and lacerations. These last mentioned injuries consisted of a protrusion on the head, which was occasioned by a blow, a cut under the chin and cuts and lacerations on the right thigh and knee. She remained in the sanitarium for two days. The following two weeks were spent at her home under the care and attention of a physician. She was confined to her bed during the greater part of that period. Thereafter she attended school, but continued to receive medical treatment at intervals for several months.

An examination of the child made almost a year after the accident revealed existing scars. One was under the chin, two on the right thigh, and two on the inner side of the right knee. The scars on the thigh were not ordinary ones, but were keloids. In the words of the medical practitioner, "The ordinary wound heals with what is called first intention; that is when there is a clean wound and it heals with a clean scar. These scars (keloids) healed with an amount of scar tissue in them and they leave a larger scar."

The record contains much expert testimony relating to a claimed fracture of the pelvis of the minor and concerning primarily the interpretation of X-ray photographs of that bone. It is, as is not infrequently found, irreconcilably conflicting. When we consider that proof in connection with the admitted fact that the child, after returning to school, was able to and did participate in various games furnished in her physical education course, it must be held that she sustained no such injury. Obviously, this was the conclusion of the trial judge.

An award of $1,000 was made in compensation of the injuries suffered by the minor. This amount appears to be proper and we shall not disturb it.

Accordingly, the judgment is affirmed.

DREW, J., concurs.