In the late afternoon of August 7, 1939, plaintiff, John A. Duke, drove his 1930 Chevrolet coupe in a northerly direction along and in the right traffic lane of U.S. Highway 165, a paved and important thoroughfare that connects Alexandria and Lake Charles, Louisiana. On reaching a point about one mile north of the Town of Long Leaf, and while traveling slowly, he commenced a left turn across the highway for the purpose of entering a graded road that courses westerly.
Because of the nearness of a 1939 Oldsmobile coupe driven by defendant, John W. Adkins, which was behind him and also proceeding toward the north, he did not complete the attempted maneuver. Instead his car was again and suddenly steered northerly; and momentarily thereafter the front portion of the Adkins car crashed into its left rear end. The left wheels of both vehicles were then on the west dirt shoulder of the highway.
Growing out of the collision is this tort action. In it plaintiff asks judgment for the damages experienced by his car and for his alleged physical impairment resulting from the accident.
The allegations of fact of the petition were considered by us on a previous occasion, such being on an appeal by plaintiff from a decree sustaining defendant's exceptions of no cause and no right of action. A detailed discussion of them is found in our opinion rendered in connection with the former hearing. 197 So. 157.
Following our overruling of the mentioned exceptions and the remanding of the case, defendant filed an answer. Created by the averments therein contained and by those of the petition were issues of negligence respecting both litigants.
The district court received evidence on those issues and rendered judgment rejecting the demands of plaintiff and dismissing his suit. From it he prosecutes this appeal.
U.S. Highway No. 165 is straight for a considerable distance north and south of the locus of the accident, and the only motor vehicles in the vicinity of that place at the time were those involved herein. Defendant was overtaking and attempting to pass plaintiff's machine, and when several hundred feet away he entered the left traffic lane and sounded a warning signal. Following this, but before the cars were opposite each other, plaintiff's left turn commenced. The brakes of defendant's car were immediately applied, and their application caused tire marks on the pavement for a distance of 151 feet back from the point of collision.
Defendant testified that he was maintaining a speed of from 50 to 55 miles per hour when the passing was attempted. Plaintiff disputes this estimate, and, calling attention to the lengthy tire marks, contends that a rate of about 70 miles was being enjoyed. It is this speed, allegedly excessive, reckless and imprudent, that, so plaintiff argues, proximately and solely caused the collision.
If it be assumed that defendant was negligent by reason of fast driving on his part, a finding unnecessary to be made, it clearly appears that plaintiff committed an act of negligence that was a contributing and a proximate cause of the mishap and bars his recovery herein.
According to the testimony of plaintiff, he, on looking into the rear view mirror, first saw defendant's car approaching when it was about 600 feet away. He gave an arm signal, and while a distance of from 100 to 150 feet intervened, the left turn started. Plaintiff was questioned: "If you saw the car coming, Mr. Duke, in the back of you, why did you start turning to the left?" He replied: "Well, I thought he was going to slow down, I had done give him the signal to slow down, that's why."
Other evidence given by plaintiff, and obviously damaging to his cause, is to be found in the following questions and answers:
"Q. Then you would tell the Court he was going that fast when you first saw him? A. Well, after he commenced approaching me I saw he was coming that fast.
"Q. Then, at what time did you first ascertain the speed that the defendant was maintaining? A. Just as I went to turn and I saw he was coming so fast I couldn't make the turn and I jerked my car and it went sort of like that. (Witness snaps his fingers.)
"Q. The Court is anxious to know at what time you found out the speed of the defendant; when you went to turn to the left, was it when you first started to the left? A. I was just fixing to pull my *Page 528 
wheel and I saw I couldn't make it and then I just whirled it back and he came straight in to me behind.
"Q. As I understand it you were fixing to turn your wheel and you knew he was driving at a high rate of speed? A. That was it."
The driver of a vehicle on a public highway before turning from a direct line must first see that such movement can be made in safety. Rule 10, Section 3, of Act No. 286 of 1938. A left turn is one of the most hazardous movements that can be performed by a motor vehicle and it should not be undertaken except under favorable conditions. Monroe Hardware Company v. Monroe Transfer Warehouse Company, Inc., et al., La.App., 167 So. 498; Vernon v. Gillham et al., La.App., 179 So. 476; Fields v. Owens, La.App., 186 So. 849. With the overtaking defendant car in close proximity to the Chevrolet, as above shown, certainly favorable conditions for the maneuver attempted by plaintiff did not exist; and the latter, in view of his appreciation of defendant's speed and nearness, is chargeable with the realization that a turning to the left was unsafe.
Consequently, we held that plaintiff acted negligently in proceeding as he did, and his negligence had a causative connection with the accident.
The judgment, for the reasons given, is affirmed.