FOURNET, Justice.
 

 The judges of the Court of Appeal for the Second Circuit of Louisiana, availing themselves of the provisions of Section 25 of Article 7 of the Constitution of 1921, have submitted for our instruction a question of law which arises in the above entitled case pending before them on rehearing. In their original decree, they had affirmed the judgment of the lower court in favor of the plaintiff.
 

 The facts of the case as certified to us, and accepted by both plaintiff and defendant, are as follows:
 

 “The town of Lake Providence is a municipal corporation chartered under the laws of the State of Louisiana. It owns and operates the light and water utilities used there. Mr. E. J. Chaney is and has been for many years the superintendent and manager of the town’s light and water department. Among his many duties were
 
 *779
 
 the overseeing of the installation of house connections and the extension of water mains, and, in the event of fire, to be present at the plant and assure the maintenance of an adequate water pressure. He was required to go to various parts of the town whenever necessary, whether day or night.
 

 “Full authority for the employing and discharging of persons in connection with the ordinary work of the department was his. However, the designation of fixed employees, such as an assistant or assistant engineer, required the approval of the town’s mayor and aldermen. He was also empowered to purchase materials needed by the department.
 

 “The Town of Lake Providence purchased for and furnished to Mr. Chaney, for use in the performance of his work, a Ford coupe. The machine was kept at his residence at night, with the permission of the governing authorities, to facilitate the discharge of his duties.
 

 “On the night of January 3, 1936, the superintendent went to his home and ate supper. He then asked his son John Chaney, who was in his eighteenth year and lived at the father’s home, to accompany him in the town’s car to the Providence Motor Company, located in the municipality. His purpose in going there was to obtain his personal car, on which repairs had been made, and his son was taken along to drive one of the automobiles back. On arriving at their destination the son remained in the Ford coupe while the superintendent went inside. He observed the repairs made on his car, and also entered into a discussion with a representative of the automobile company regarding the purchase of some tires 'for a truck that belonged to the town. He does not remember whether or not he had the tires in mind when he went there; however, previous thought ha.d been given to such a purchase. The discussion caused a delay, so he directed his son to drive the town car back to his home and store it for the night, where it might be had in case he needed it. The son was not an [regular] employee of the town then, but he had previously worked for the utilities department on several small extra jobs. (Brackets ours.)
 

 “The son proceeded to obey the directions given him, and while driving the car toward the designated place of storage it struck and severely injured the plaintiff herein. She instituted this suit against the Town of Lake Providence and the liability insurer of the automobile, asking an award of damages for her injuries.”
 

 The question submitted for our instruction is: “Assuming that the driver of the automobile, the superintendent’s son, had the last clear chance to avoid the accident, but failed in his duty to do so, under the facts and circumstances above stated is the Town of Lake Providence legally responsible for the damages occasioned by his negligence?”
 

 The town of Lake Providence is authorized, under the provisions of Act 136 of 1898 (section 13), as amended by Act 181 of 1914 and Act 135 of 1916, to own and conduct the business of furnishing electricity and water to the inhabitants thereof. When engaging in such venture the corporation represents the pecuniary and pro
 
 *781
 
 prietary interest of individuals, and its liability for damages occasioned by the negligence of its officers, employees, and agents in connection with such enterprises, is governed by the rules applicable to any private corporation or individual engaged in a similar business. See the City of New Orleans v. Kerr et al., 50 La.Ann. 413, 23 So. 384, 69 Am.St.Rep. 442; Gann v. Great Southern Lumber Co., 131 La. 400, 59 So. 830; West Monroe Manufacturing Co. v. Town of West Monroe, 146 La. 641, 83 So. 881; Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Davis v. New Orleans Public Belt R. Co., 155 La. 504, 99 So. 419, 31 A.L.R. 1303; Hall et al. v. City of Shreveport, 157 La. 589, 102 So. 680; Howard v. City of New Orleans, 159 La. 443, 105 So. 443; Rome v. London & Lancashire Indemnity Company of America, 181 La. 630, 160 So. 121; Municipal Corporations, 28 Cyc. 1257; 43 Corpus Juris 920; and 19 R.C.L. 1109.
 

 This liability of an individual or corporation for the tortious acts of its agents, officers, or employees, and the liability of a master for the tortious acts of his servant is grounded upon the maxim of respondeat superior and is to be determined “ * * * by considering, from the factual standpoint, the question as to whether or not the tortious act was done while the agent or servant was acting within the scope of his employment.” 2 American Jurisprudence 278, 279. See, also, Gaillardet v. Demaries, 18 La. 490; Boulard v. Calhoun, 13 La.Ann. 445; Williams v. Car Company, 40 La.Ann. 87, 3 So. 631, 8 Am.St.Rep. 512; Graham v. St. Charles Street R. Co., 47 La.Ann. 1656, 18 So. 707, 49 Am.St. Rep. 436; Dorsey v. Railway Co., 104 La. 478, 29 So. 177, 52 L.R.A. 92; James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9, and Article 2320 of the Revised Civil Code.
 

 In the instant case the defendant contends that the plaintiff is not entitled to recover against the town for the reason that: “At the time of the accident John Chaney was not driving the car as the agent or employee of the Town of Lake Providence, was not engaged in the course or scope of any employment by the Town, and was not pursuing the business or benefit of the Town.” In support of this contention the defendant relies on the ruling of this court in the case of James v. J. S. Williams & Son, Inc., 177 La. 1033, 150 So. 9, 11.
 

 In that case the defendant company owned and operated an undertaking establishment in the city of Shreveport and employed one Roy Rhodes to drive its funeral car which was kept in a garage at defendant’s place of business. One evening, after the day’s work was done, one Jemison, a helper in the establishment, requested Rhodes to take him home in the funeral car. Rhodes did so and while on the way back to defendant’s garage where he intended to store the car for the night, he ran over plaintiff and injured her. In the course of the opinion this court said:
 

 “It would be wholly illogical to hold that when a chauffeur takes his employer’s automobile without authority and us'es it for a mission of his own, his employer is not responsible for his negligent acts while on the outgoing trip, but is responsible for
 
 *783
 
 such acts while he is on his way back, because if the outgoing trip is unauthorized and beyond the scope of the employee’s ■employment, the incoming trip is likewise so, being a continuation and part of the same unauthorized mission. An employee may suspend his contractual relations with his employer by temporarily departing from the scope of his employment and going on a mission of his own or for another, and, when he does, that relationship is suspended during the entire time he is on such mission, and not half the time.
 

 “If a chauffeur suspends his contractual relations with his employer by taking and using his employer’s car for his own private purposes, as relates to the use of the car for the purpose taken, he is in law a stranger to the owner and his use of it is unlawful, as much so as if he were not employed by the owner in any capacity. It would hardly be contended that if a stranger went to a garage, took an automobile and used it for a joy ride, the owner of the car would be responsible for the negligent acts of the trespasser while on his way back to the garage for the purpose of restoring the car. Yet that would be as logical as to say that the owner is responsible for the negligent acts of his chauffeur who is returning from a wholly unauthorized mission.”
 

 The facts of this case are distinctly different from those in the James case in so far as the scope of the duties entrusted to the respective employees is concerned. In the James case Rhodes was a helper in the funeral establishment and his authority to use the car was limited to driving the same when in connection with the defendant’s business. All other acts by him were unauthorized and in violation of his authority, and when he took the car to take Jemison to his (Jemison’s) home, such act could not in any way be connected with the business of the defendant or in any way benefit defendant, and we therefore think that the court properly concluded that: “When Rhodes turned aside to do something in no way connected with or incidental to his employment, the relationship of master and servant was suspended and remained suspended so long as he was engaged in doing the unauthorized act.”
 

 In the case at bar Chaney was given by the town of Lake Providence, and his duties required, the freest possible use of the car, so that he could be present where needed as quickly as possible. Wherever in the city he might be, he was subject to instant call. “Being available” at all times was an essential requirement of his employment.
 

 “Subject to the limitation that the acts complained of must be within the scope of the servant’s employment, a master is liable for the acts of one whom, the servant employs under authority given him by the master to assist in the performance of the master’s work. The authority to employ assistants may be either express or implied; it may be implied from the nature of the work to be performed, from the general course of conducting the business of the master by the servant, or from the circumstances of the particular case.” 39 Corpus Juris, paragraph 1458.
 
 “It is not necessary that
 
 * * *
 
 compensation
 
 
 *785
 

 should be paid by or expected from him.”
 
 18 R.C.L., section 245, at page 785. See, also, 26 Cyclopedia, Master and Servant, 1521. (Italics ours.)
 

 “The language ‘in the course of his servant’s employment’ * * * is not to be taken ■ as synonymous with ‘whilst the servant was employed by him,’ hut refers, as we understand it, to acts done by the servant, however ill judged, in connection with, or in furtherance of,.the purposes of his employment.” Gann v. Great Southern Lumber Company, 131 La. 400, 59 So. 830, 832.
 

 In the Gann case the court quoted with approval from the case of Barrett v. Minneapolis, etc., R. Co., 106 Minn. 51, 117 N. W. 1047, 18 L.R.A.,N.S., 416, 130 Am.St. Rep. 585, the following:
 

 “The doctrine of respondeat superior is not limited to the acts done with the express or implied authority of the master, but extends to the acts of the servant done in the discharge of the business intrusted to him, even though done in violation of instructions.”
 

 As stated in Corpus Juris: “The test as to liability of the master is whether the servant was guilty of negligence in the doing of his master’s work. It is not essential that the negligent act or omission complained of should have been expressly authorized by the master, or that he should have been present when the act or omission complained of was committed, or that he should have had knowledge of the act or omission which caused the injury. And so long as the act is within the scope of the servant’s employment, it is immaterial, as affecting the master’s liability, what the motive of the servant was. The fact that he had delegated to a third person the power to give the servant instructions as to his work will not exonerate the master from liability.” 39 Corpus Juris, Section 1486, at page 1291.
 

 In the case of Cusimano v. A. S. Spiess Sales Company, 153 La. 551, 96 So. 118, 119, this court gave a brief statement of the liability of the master for the servant’s unauthorized acts as follows:
 

 “It is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from his master’s business. Duffy v. Hickey, 151 La. 274, 91 So. 733. Nor does the master’s liability cease merely because the servant is acting contrary to, or even in defiance of, express instructions from his master, Winston v. Foster, 5 Rob. 113. But the servant must have abandoned and turned aside completely from his business, to engage in some purpose wholly his own, before the master ceases to be liable for his acts.
 

 “And even though a servant may have turned aside from the master’s business, yet the liability of the master reattaches as soon as the servant reassumes the business of his master.
 

 “And the authorities hold that, when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master.”
 

 and held “ * * * that, even if defendant’s chauffeur had turned aside from de
 
 *787
 
 fendant’s business for some purpose of his own, yet at the moment of the accident he had fulfilled his own purpose, and was then in the act of attending to the business of his master either by continuing his deliveries or by returning to the store. And we think his master is liable for his negligence when so engaged.”
 

 In the Cusimano case this court quoted with approval from the case of Barmore v. Vicksburg, S. & P. Ry. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627, 3 Ann.Cas. 595, as follows:
 

 “The rule that, where a servant has made a temporary departure from the scope of his employment, the responsibility of the master for the tort of the servant attaches immediately after the purpose of such departure has been accomplished and as soon as the servant re-engages in the discharge of his duty, applies where an employee of a railroad company, whose duty requires him to use a railroad tricycle to aid in gathering wood, leaves the place, where he is thus employed, to carry a sick friend on the tricycle to a station, and, after leaving such friend at the station, injures a third person through his negligence in running the tricycle, though the accident happens before the servant reaches the place from which he started. * * *
 

 “When did Watson resume his service, so as to render his master liable? His private affair was to carry a sick friend to the station, but when that was completed and he began to propel the railroad tricycle back over the route which he had previously traveled, with the intention and for the purpose of proceeding to the discharge of the duty which he was employed to perform, he then resumed his master’s service,
 
 which had been suspended temporarily while he was engaged about his own affairs.
 
 The argument that Watson did not resume his duty until he actually reached the spot where he was to gather the fuel rests on no solid legal foundation. He was operating the appliance which it was his duty to operate. He was on the track at a place which he was compelled to pass over, and proceeding to the place where his duty called, for the purpose of performing that duty, and was at the time of the injury engaged about no affair of his own, but discharging in the usual and customary manner the business for which he was employed. Under such circumstances the master is answerable for the tort of the servant.” The following authorities were cited in support thereof: Chicago Con, Bottling Co. v. McGinnis, 86 Ill.App. 38; M., K. & T. Ry. Co. v. Edwards (Tex.Civ.App.) 67 S.W. 891; Pittsburgh, C. & St. L. Ry. Co. v. Kirk, 102 Ind. [399] 404, 1 N.E. 849, 52 Am.Rep. 675; also East St. Louis Connecting R. Co. v. Reames, 173 Ill. [582] 586, 51 N.E. 68; Ritchie v. Waller, 63 Conn. 155, 28 A. 29, 27 L.R.A. 161, 38 Am.St.Rep. 361; Whatman v. Pearson, L.R. 3 C.P. 422, 37 L.J. C.P. 156. (Italics ours.)
 

 According to the facts of this case, as hereinabove stated, E. J. Chaney drove the town car to the Providence Motor Company’s place of business to get his personal car, which was then being repaired, and after reaching the place entered into a discussion with a representative of the
 
 *789
 
 company regarding the purchase of tires for the town, which under his contract of employment he was authorized to do, and, as stated in the facts certified to us by the Court of Appeal,
 
 “The discussion caused a delay,
 
 so he directed his son to drive the town car back to his home and store it for the night, where it might be had in case he needed it.” (Italics ours.)
 

 We therefore conclude that in view of the broad and general scope of the duties of E. J. Chaney, as well as of his authority in connection therewith, and the fact that "being available” at all times — twenty-four hours a day — was an essential requirement of his employment, when he directed 'his son to return the town car to his home
 
 “where it might be had in case he needed it”
 
 he was acting within the scope and authority of his employment and in the furtherance of the business and interest of the town. (Italics ours.)
 

 For the reasons assigned, the question certified by the judges of the Court of Appeal is answered in the affirmative.
 

 O’NIELL, C. J., and ROGERS and ODOM, JJ., dissent.