A Pontiac coach automobile, driven by Miss George Huff and owned and also occupied by Mr. and Mrs. R.C. Dudley, collided with a Dodge truck on U.S. Highway 65 several miles south of Lake Providence, Louisiana, during the afternoon of September 7, 1939. The Dudleys were severely injured; and, as a result of his injuries, Mr. Dudley died the following day.
The highway, consisting of an 18 foot concrete slab with the usual medial black line, is a main artery of travel and experiences much traffic. For a considerable distance north and south of the point of collision it is straight and level. During the mentioned afternoon, the weather was clear and the concrete was dry.
The Pontiac was traveling south and was in the act of overtaking and passing the truck proceeding in the same direction when the latter, operated by Charles Surles, suddenly and shortly turned to the left from the west traffic lane to enter a dirt road on the east side. The right front wheel of the Pontiac contacted the left front wheel of the truck and both vehicles, as a result thereof, became uncontrollable. The Pontiac turned over at least one time and finally stopped in the east ditch about 150 feet from the point of impact. The truck angled to its right and went into the ditch west of the highway.
Charles Surles, the driver of the truck, resided with and was the minor son of J. Cluren Surles who managed Way-a-Way Plantation belonging to Mrs. Elizabeth Amacker. The dirt road, toward which the truck was being steered, served only as a driveway to the house on the plantation where such manager lived.
Mrs. Eva H. (R.C.) Dudley brought this suit, impleading as defendants J. Cluren Surles and Mrs. Elizabeth Amacker, to recover damages sustained by her and her deceased husband as a result of the accident.
Plaintiff alleges that the collision and subsequent injuries to her and her husband were caused solely and only by the carelessness and negligence of Charles Surles, more particularly for the following reasons:
"1. In making a left turn on a through highway at a time and place where he knew, or by the exercise of reasonable diligence on his part, should have known, that there was an automobile immediately behind or almost abreast of his vehicle, which automobile was engaged in the act of attempting to pass his truck. *Page 72 
"2. In making a left direction turn without giving an arm signal on a public through highway at a time and place when he knew, or should have known, by the exercise of reasonable diligence on his part, that there was an automobile immediately behind him or almost abreast of his vehicle, which said automobile was engaged in the act of passing his truck.
"3. By his failure to turn his head and look back and/or to look in his rear view mirror to see if the way was clear, knowing that the said highway was at all times heavily travelled and by the exercise of reasonable diligence should have known that there was a car immediately behind him engaged in the act of attempting to pass his said truck.
"4. By his inattention, carelessness and disregard in hearing the horn signal sounded by Miss Huff, on a highway where he knew, or should have known, many numerous automobiles were traveling and would sound their horns when overtaking and passing his said truck."
J. Cluren Surles is sought to be held liable under that provision of our law which makes the parent responsible for the damage occasioned by his minor child residing with him.
As to the contended liability of Mrs. Elizabeth Amacker, the petition contains allegations to the effect that the truck was being used by Charles Surles under orders of Mrs. Amacker's farm manager, J. Cluren Surles, in the furtherance of her business and affairs.
Defendants filed separate answers. Each denies negligence on the part of Charles Surles; avers that the accident was caused solely by the gross negligence of Miss George Huff or, alternatively, that she was contributorily negligent; and further avers that Miss Huff's negligence was imputable to plaintiff and her husband and bars recovery herein.
Mrs. Amacker also denies those allegations of the petition relating to the existence of a master and servant relationship between her and Charles Surles at the time of the collision.
J. Cluren Surles died after the filing of his answer and before trial of the case; and Alphy Pittman Surles, the duly qualified administrator of his succession, was made a party defendant in his stead by the court's order.
Evidence was adduced on the issues created by the pleadings; and the district judge concluded that there was negligence on the part of Charles Surles which solely caused the accident, and that for the damage occasioned thereby J. Cluren Surles, the minor's father, was responsible. He further concluded, however, that such minor was not an agent, employee or servant of Mrs. Amacker and that she was in no manner liable.
Accordingly, there was judgment in favor of plaintiff and against defendant J. Cluren Surles (Alphy Pittman Surles, administrator) for $10,710.90, together with legal interest and costs of the suit. The demands of plaintiff against Mrs. Amacker were rejected.
Appeals are being prosecuted by plaintiff, Mrs. Eva H. (R.C.) Dudley and by Alphy Pittman Surles, administrator.
Our thorough and careful study of the evidence in the record has furnished to us the conviction that there was gross negligence on the part of Charles Surles in that he commenced his left turning maneuver when it was manifestly unsafe for him to attempt, the overtaking Pontiac then being in very close proximity to him.
According to Miss Huff, the driver of the Pontiac, she was in the act of passing the truck, being about 30 feet away, as Surles steered his vehicle suddenly and abruptly to the left in front of her. True, Charles Surles says that before commencing to turn he looked into his rear view mirror, and also turned his head and peered through the rear window of his cab, and saw a machine approaching between 200 and 300 yards away. But he is not positive that the car observed was the Pontiac. Quite likely it was another machine that, as the evidence discloses, had been trailing him and the Pontiac had already passed.
The fact that the front end of the truck had reached a distance of only 3 1/2 feet east of the center line, this being shown by the testimony of a disinterested witness, argues strongly in favor of the closeness of the colliding vehicles when the turn began and tends to corroborate the testimony of Miss Huff in that respect.
A left turn on a public highway is an exceedingly hazardous maneuver and the motorist desirous of attempting that movement must first see that it can be *Page 73 
made in safety. Rule 10, Section 3, of Act No. 286 of 1938. Monroe Hardware Company v. Monroe Transfer Warehouse Co., Inc., et al., La.App. 167 So. 498; Vernon v. Gillham et al., La.App., 179 So. 476; Fields v. Owens, La.App. 186 So. 849; Duke v. Adkins, 2 So.2d 526.
Charles Surles violated the stated legal duty in that he sought to enter the dirt road on the east when an unsafe condition endured. It is of no moment that he did not have actual knowledge, if such was the case, of the nearness of the Pontiac. That machine was only a few feet away and he is chargeable with seeing that which he should have seen.
Perhaps he gave an arm signal indicative of his intended turning, as he states; although Miss Huff insists that such was not done. But if he did so signal, his efforts were too late to be effective. According to his testimony, his arm was extended from the truck after his looking to the rear and seeing a car approaching. This obviously was the mentioned trailing machine. The Pontiac, as above shown, was then very near his truck.
Let us now consider the alleged negligent driving of Miss Huff. We find that she was proceeding, in her effort to overtake and pass the truck, in the left or east traffic lane. The highway was straight; visibility was good for a great distance ahead; and there were no on-coming cars or other objects in the traffic lane that she occupied. Her speed, so she testifies and the trial judge found, was approximately 50 miles per hour. This was not excessive under the circumstances pointed out.
Charles Surles tells of an admission assertedly made by her shortly after the impact that "she was going at a high rate of speed about 70 miles an hour"; but it is seriously doubted that such a remark was offered in view of the fact that she was then immensely concerned with removing to a hospital as soon as possible her severely injured sister and brother-in-law. Furthermore, no one else expressed the view that she was proceeding too fast.
The fact that the Pontiac traveled 150 feet before stopping does not necessarily indicate excessive speed. That machine was uncontrollable immediately after the impact; and, considering such condition, its continuing a great distance was possible.
Defendants contend that Miss Huff failed to signal as required by law her intention of passing the truck. This contention is based solely on the testimony of Charles Surles that she did not blow the horn of her car until the moment of the impact. Miss Huff is positive that her horn was sounded about 150 feet from the truck and again as the left turn commenced; and we accept her testimony as revealing the true situation on this disputed point. It was but natural that she should so act. She had just passed the machine trailing the truck and was then engaged in going around the truck.
Miss Huff is further charged with negligent driving in that she was attempting a passage of the truck at the intersection of a public highway, this being in violation of subsection e, rule 7, section 3 of Act No. 286 of 1938, which reads: "The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at any * * * intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer."
The trial judge held, as shown by his written opinion, that the locus of the collision could not be termed the intersection of a highway, so as to make applicable the quoted statutory provision, because the dirt road running east and west is not clearly defined and there is nothing to distinguish it from the ordinary plantation crossing. The evidence sustains his finding and holding. In this connection it may be further observed that the road on the east side runs only a short distance to the plantation home and serves merely as a driveway to that dwelling, as before shown, while on the west it is narrow and courses through the plantation.
Therefore, we are of the opinion that Miss Huff was not guilty of negligent operation of the Pontiac and that the sole proximate cause of the collision was the gross negligence of Charles Surles in maneuvering the truck as he did.
The minor's father, J. Cluren Surles, was liable for the damage occasioned by such negligent act in as much as the minor was residing with him at the time. Revised Civil Code, Article 2318. *Page 74 
With reference to the question of whether or not there existed between Mrs. Elizabeth Amacker and Charles Surles a relationship of master and servant so as to impose liability on the former, the following facts, proven by the evidence, are pertinent.
Mrs. Amacker had extensive farm holdings in East Carroll Parish, Louisiana, including Way-a-Way Plantation on which her farm manager, J. Cluren Surles, lived. Robert N. Amacker, her son, generally supervised all of those holdings, acting under a duly executed power of attorney; but additionally he operated for himself, independently of his mother, a 160 acre farm known as the Jake Ware Place which he possessed under a bona fide lease from the owner thereof, the Prudential Insurance Company of America.
The truck involved in the accident belonged to one Sam Mingleton and was burdened with a mortgage held by Mrs. Amacker. Such owner being delinquent in his mortgage payments at the time, it was kept by J. Cluren Surles and used on the Way-a-Way Plantation.
Before leaving on a trip to Baton Rouge, Louisiana, Robert Amacker requested J. Cluren Surles to transport for him to Lake Providence, Louisiana, certain tenants living on his Jake Ware Place, so that they could apply for parity payments under the United States Government's AAA farm program.
Charles Surles, being delegated by his father to perform this transporting task, drove the truck on the morning of September 7, 1939, to the Jake Ware Place, picked up the designated tenants of Robert Amacker, and carried them to Lake Providence where their parity payment applications were signed. On the completion of the signing, all again entered the truck and were delivered back to their homes. Charles Surles, following that delivery, was returning to the Way-a-Way Plantation when the collision occurred.
It is provided in Revised Civil Code Article 2320 that "masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." As stated by the Supreme Court in Oliphant v. Town of Lake Providence et al., 193 La. 675, 192 So. 95, 101: "The controlling phrase in this article is `in the exercise of the functions in which they are employed'. That means that employers are answerable for damages caused by their employees in the cases only where the damage is done while the employee is performing some duty which he is employed to perform."
J. Cluren Surles, who delegated the transporting task to his son, was an employee of Mrs. Amacker; but it cannot be said that the damage in question was occasioned in the exercise of a function in which he was employed. We agree with the trial judge that "this particular trip, which originated at the home of J. Cluren Surles, and the return thereto, was a special trip separate and distinct from any activity connected with the properties or operation of Mrs. Amacker, because the testimony shows that this trip was made for the specific purpose of transporting tenants from the place leased and operated by Robert N. Amacker to the AAA office at Lake Providence, the return of said tenants to their respective domiciles and the driving of the truck back to the home of J. Cluren Surles by Charles Surles. There was no turning aside to perform any act for Mrs. Amacker."
It therefore follows that there is no liability on the part of Mrs. Amacker for the negligent act, with its resulting regrettable consequences, of Charles Surles.
The quantum of damages fixed by the district court is not questioned by any of the parties litigant, and there appears no good reason for our disturbing it.
The judgment is affirmed. *Page 75