280 So.2d 651 (1973)
Russell VALENCE et al.
v.
STATE of Louisiana et al.
No. 9344.
Court of Appeal of Louisiana, First Circuit.
June 20, 1973.
Rehearing Denied July 20, 1973.
Writ Refused September 14, 1973.
*653 Stanwood R. Duval, Jr. and Robert L. Picou, Jr. (Duval, Arceneaux, Lewis & Gaidry), Houma, for Lynwood and Karen Wilcox.
Bart Eaton, Baton Rouge, for State of La.
Jack C. Benjamin (Kierr, Gainsburgh & Benjamin), New Orleans, and Wollen J. Falgout, Thibodaux, for appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
PICKETT, Judge.
This action was instituted by Russell Valence, individually and as administrator of the estate of his minor son, Barry Valence, against the State of Louisiana, Karen Wilcox, and Lynwood Wilcox, Jr., to recover damages for personal injuries, pain, suffering and residual disabilities resulting from a gunshot wound sustained by Barry Valence, and for medical and hospital expenses incurred by plaintiff, Russell Valence because of said injuries. Defendant, State of Louisiana, answered with a general denial of liability. Defendants, Karen Wilcox and Lynwood Wilcox, Jr., filed an answer and a third party demand, in which they not only denied any negligence on their part, but alleged the injury to Barry Valence was caused by the negligence of his older brother, which negligence was of such an intervening nature as to preclude recovery by plaintiff. After a trial on the merits there was judgment against the defendants in solido and in favor of the plaintiff individually for the sum of $7,852.82, and in favor of plaintiff as administrator of the estate of the minor, Barry Valence, in the sum of $75,000.00, together with legal interest from date of judicial demand until paid, and all costs. The defendants have appealed.
There is very little dispute as to the facts. The primary controversy revolves around the application of the law.
The record shows that defendant, Lynwood Wilcox, Jr., was employed as a State Police Officer, and had been so employed for approximately seven and one-half years at the time of the trial of this case. The record indicates that in connection with his employment he was required to purchase a regular 357-magnum six-shot service revolver. Because of threats made against Trooper Wilcox, his employer had issued him an extra firearm, a .22-caliber magnum derringer pistol, to be used both on and off duty. Trooper Wilcox worked a regular eight-hours shift, but was subject to be called to duty twenty-four hours per day. Occasionally he was required to report for duty after his regular shift had been concluded.
Trooper Wilcox testified that when the extra weapon was first issued to him, he carried it concealed on his person. But he found it somewhat cumbersome to carry it on his person; and he adopted the practice of storing it in the glove compartment of his personal automobile, a 1966 Ford Fairlane. Because of threats made by persons whom he had arrested while on duty, he was apprehensive about his safety and that of his family; and in order to have ready access to the weapon he did not lock the glove compartment of his automobile, where the loaded weapon was stored. This is the weapon with which Barry Valence, the four-year-old son of plaintiff was shot.
The sequence of events leading up to, and surrounding the injury of Barry Valence are clearly set forth by the trial court, as follows:
"On the day of the casualty, Trooper Wilcox returned to his home in Raceland, *654 following his regular duty shift for the State, shortly after 3 p. m. On this date, the Trooper permitted his wife, Karen, to use the family vehicle and to take their three-year-old daughter, Charlotte, to visit plaintiff's home in Raceland. The record indicates that Mrs. Wilcox intended to demonstrate to Mrs. Valence techniques in "selling aluminum cookware, an endeavor in which Mrs. Wilcox had experience and which Mrs. Valence techniques in selling aluminum two ladies and their children had visited with each other on prior occasions. The Trooper did not remove the derringer from the glove compartment of his car, nor did he lock the glove compartment, notwithstanding the fact that he did not intend to and did not accompany his wife and child to the Valence home.
"Mrs. Wilcox drove to the Valence home, parked her car in the driveway of the yard and went inside the house, leaving her daughter outside, in the yard, to play with the Valence children. Although she was aware of the presence of the weapon in the glove compartment, she made no mention of it to Mrs. Valence; nor did she warn any of the children about it. All the Valence children were children of tender yearsRonnie, age seven; Timmy, age six; Barry, age four; and Michele, a two-year-old. The record indicates the children customarily played in the yard, in which was located, among other things, playground equipment.
"A neighbor of plaintiff, Mrs. James T. Gamble, testified that she was an eyewitness to the circumstances leading up to and the shooting incident. She stated the children were playing in the yard (she presumed they were playing cowboys and Indians, which she knew they had done on numerous prior occasions) around the Wilcox automobile, which was parked within view of her window. Mrs. Gamble stated she saw Barry's brother Ronnie point something at his brother Barry (she assumed this to be a weapon) heard a shot and observed what she described as a `clip' fall to the ground. She concluded that the seven-year-old Ronnie Valence had fired the shot which wounded his four-year-old brother, Barry. The pistol was later found in the yard near the stricken boy and returned to Mrs. Wilcox." Based on the foregoing facts, the trial court concluded:
"There should be no dispute that a loaded 22-caliber pistol is a firearm and is a dangerous instrumentality. Normand v. Normand [La.App.], 65 So.2d 914 (1953). `Dangerous instrumentalities' have been defined as: `... instruments and articles in their nature calculated to do injury to mankind and generally intended to accomplish that purpose.' 25 P.C.J.S. 468; 56 Am.Jur. § 22; R.S. 14:91.
"It follows, then, the law imposes a duty to use extraordinary care on the part of those in control of such weapons. [Waters] v. Southern Farm Bur. Cas. Ins. [La.App.], 212 So.2d 487 (1968); Cavalier v. American Employers [La. App.], Ins. Co. 1970 [170] So.2d 713 (1964); Normand v. Normand, supra; see, also, Roberie v. Sinclair Refining Co. [La.App.], 252 So.2d 488 (1971).
"In this Court's view, the conduct of both Mr. and Mrs. Wilcox, under the circumstances, constitutes actionable negligence. Storing a dangerous instrumentality in an unlocked glove compartment of a vehicle and permitting children to have access to it is tortious conduct proscribed by law. Particularly is this true under the circumstances herein since the Wilcoxes had been forewarned of the risk involved. Months before the tragic casualty herein, their own child extracted the loaded weapon from the unlocked glove compartment and fired it. That other children might do the same on future occasions should have been and was foreseen by Trooper Wilcox, who weighed the risks involved and consciously *655 chose to bear the risk of danger to children rather than to subject himself and family to reprisals from vindictive persons he had previously arrested, without protection."
We agree with the finding of the trial court that Trooper Wilcox and his wife were both guilty of negligence by leaving the loaded weapon where it was accessible to the children of tender age. The defendants admitted knowledge of at least one prior occasion when the gun had been taken from the glove compartment of their vehicle by their small child and that the child had discharged the weapon. By the simple expedient of removing the pistol from the glove compartment of the vehicle, either by Trooper Wilcox or his wife, the casualty would have been avoided. The failure to do so was negligence. Furthermore, Mrs. Wilcox did not notify Mrs. Valence of the presence of the weapon in her vehicle, although she knew that Mrs. Valence's small children were playing in the yard and around the vehicle. Therefore, we conclude that the negligence of Mrs. Wilcox imposes liability not only upon her but upon the community of acquets and gains existing between her and her husband. Vail v. Spampinato, 238 La. 259, 115 So.2d 343.
The trial judge found the State of Louisiana responsible both under the doctrine of respondeat superior and because of independent negligence.
The trial court in support of its conclusion that the State of Louisiana is responsible under the doctrine of respondeat superior, cited: Article 2320 of the Louisiana Civil Code; Webb v. State, La.App., 91 So.2d 156 (1956); Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960). The doctrine of respondeat superior is stated in LSA-C.C. Article 2320 as follows:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
The above quoted statute has been consistently construed by the courts of this state to mean that an employer is responsible for the tortious or negligent acts of an employee only when the employee is acting within the scope and course of his employment. In the case of Oliphant v. Town of Lake Providence, 193 La. 675, 192 So. 95, the Supreme Court stated the general rule under which an employer may be responsible for the negligence of an employee, as follows:
"This liability of an individual or corporation for the tortious acts of its agents, officers, or employees, and the liability of a master for the tortious acts of his servant is grounded upon the maxim of respondeat superior and is to be determined `* * * by considering, from the factual standpoint, the question as to whether or not the tortious act was done while the agent or servant was acting within the scope of his employment.' 2 American Jurisprudence 278, 279. See, also, Gaillardet v. Demaries, 18 La. 490; Boulard v. Calhoun, 13 La.Ann. 445; Williams v. Car Company, 40 La.Ann. 87, 3 So. 631, 8 Am.St.Rep. 512; Graham v. St. Charles Street R. Co., 47 La.Ann. 1656, 18 So. 707, 49 Am.St.Rep. 436; Dorsey v. Railway Co., 104 La. 478, 29 So. 177, 52 L.R.A. 92; James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9, and Article 2320 of the Revised Civil Code."
In the Oliphant case, supra, the Court also pointed out the conditions and circumstances under which an employer will be held responsible for the negligent use of an instrumentality furnished by the employer, as follows:
"And the rule is restated, specifically, by the American Law Institute in the Restatement of the Law of Agency, § 238, b., p. 535, thus:
`The mere fact that the master habitually allows the servant to use the instrumentality, or even that the master maintains the instrumentality entirely for the use of the servant, does not of itself subject the master to liability. The master is liable only when the instrumentality is *656 being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant. Thus, a master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes; nor is he liable if a group of servants, with his permission, use it for private purposes.'"
Therefore, the question of the responsibility of the State of Louisiana under the doctrine of respondeat superior, rests upon a determination of whether or not the negligent conduct of Trooper Wilcox arose in the course and scope of his employment. At the time of the accident, Wilcox was off duty. Although he was callable 24 hours per day, there is no evidence that he was performing any service in connection with his employment, at the time of the tragic accident. He did not have the gun when the Valence child was shot. The weapon was in the automobile which he had permitted his wife to drive to the plaintiff's home. We conclude that Trooper Wilcox was not performing any service for which he had been employed by the State of Louisiana, at the time Barry Valence was shot. Hence we find the State of Louisiana is not responsible under the doctrine of respondeat superior for the negligence of Trooper Wilcox.
The trial judge held the State of Louisiana to be "liable for its own independent negligent acts which proximately caused and/or contributed to the injuries sustained by plaintiff's son." The trial court pointed out that the State had not properly instructed Trooper Wilcox in the use, maintenance or storage of the weapon with which plaintiff's son was wounded; and that such failure constituted independent negligence. The evidence shows that Trooper Wilcox received the training afforded all candidates for the State Police. Furthermore, the record shows that Trooper Wilcox was furnished a copy of the Louisiana State Police manual which includes instructions and regulations pertaining to weapons used by the State Police. It is our opinion that the plaintiff has failed to prove by strict, clear and legally certain proof that any negligent acts of the State of Louisiana proximately caused, or contributed to, the injuries sustained by plaintiff's son.
For the foregoing reasons we conclude the State of Louisiana is not liable for the injuries sustained by plaintiff's son.
On the question of quantum, the evidence shows that the injured child was rendered unconscious as a result of the gunshot wound in his neck. He was confined to the hospital for 13 days, during which time he developed respiratory difficulty, and was subjected to a tracheotomy. He developed pneumonia, and was critically ill for several days. The evidence overall reveals that plaintiff's son suffered severe injuries which caused him much pain and suffering; and that he has some residual disabilities. But we do not think the record justifies the award of $75,000.00. Furthermore, having found the State of Louisiana is not liable, defendants, Trooper Wilcox and his wife, end up with the total financial burden. The evidence shows that Trooper Wilcox is a man of modest means. His income is limited to his salary as a State Trooper; and his gross salary before taxes is $650.00 per month. Mrs. Wilcox is self-employed as a cosmetologist, operating a beauty salon in her own home on a part time basis. From this endeavor, Mrs. Wilcox grosses approximately $200.00 per month; but her net earnings are not disclosed in the record. He has outstanding debts. The evidence shows that Mr. and Mrs. Wilcox have four children to support. To affirm the award of $75,000.00 would fasten an almost intolerable financial burden upon the Wilcoxes. Our courts have consistently held that a defendant's ability to pay is a factor to be considered in awarding damages. Rollins v. New York Fire and Marine Underwriter, Inc., La. App., 225 So.2d 663 (3rd Cir. 1969); Barret v. State Farm Mutual Automobile Insurance Co., et al., La.App., 236 So.2d 900 *657 (3rd Cir. 1970). Taking into consideration the nature and extent of the injuries sustained by plaintiff's son, as disclosed by the evidence, awards made in somewhat similar cases, and the limited ability of the defendants to pay, we believe that $25,000.00 is an adequate award for plaintiff's son.
An award of $7,852.82 was made to Russell Valence for special damages. The proof in the record of special damages is $2,852.82. We believe the special damages must be reduced from $7,852.82 to $2,852.82.
For the foregoing reasons, the judgment in favor of the plaintiffs, and against the State of Louisiana, is reversed and set aside; the award to the plaintiff, Russell Valence, as administrator of the estate of Barry Valence is reduced to $25,000.00, and the award to the plaintiff, Russell Valence, is reduced to $2,852.82; and, as thus amended, the judgment is affirmed in all other respects. Appellants, Lynwood Wilcox, Jr. and Karen Wilcox, to pay all costs.
Amended and as amended affirmed.