558 So.2d 1204 (1990)
Joyce WILLIAMS
v.
George STEVENSON and State Farm Insurance Company.
No. 89 CA 0126.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
On Rehearing April 25, 1990.
*1205 William H. Dunchelman, Houma, for plaintiff and appellant, Joyce Williams.
Lloyd T. Bourgeois, Labadeville, for defendants and appellees, George Stevenson and State Farm Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for personal injuries.

FACTS
In the early morning hours of July 12, 1986, plaintiff, Joyce Williams, visited defendant, George Stevenson, at his home in Houma, Louisiana.[1] Plaintiff and defendant had a long-standing friendship and sexual relationship. When plaintiff arrived at defendant's home, she tapped on the window and then knocked on the back door. Prior to answering the door, defendant, who had been the victim of several recent burglaries, armed himself with a small caliber handgun. When defendant opened the back door and became aware of the identity of his late-night visitor, he exited the house, closing the door behind him and placing the handgun in his pocket.
Plaintiff and defendant then engaged in a heated discussion, concerning defendant's other female friends. At that time, Norma Jean Morgan, who was visiting defendant, exited the house, apologized to defendant, and left. Plaintiff and defendant continued to discuss the matter.[2] Thereafter, plaintiff struck defendant on the brow with a mug. When defendant pulled the gun *1206 from his pocket to remove his keys, the gun accidentally discharged, and the bullet hit the driveway and a brick planter and ricocheted, striking plaintiff's right hand. As a result of this incident, plaintiff sustained serious injury to her hand.
On April 1, 1987, plaintiff filed the instant suit for damages against defendant, George Stevenson, and State Farm Insurance Company (State Farm), Stevenson's homeowners insurer. After trial on the merits, the jury determined that plaintiff and defendant were both negligent, which negligence caused plaintiff's injuries. The jury assigned 60% of the fault to plaintiff and 40% of the fault to defendant. In assessing damages, the jury awarded plaintiff $39,000.00 for past, present, and future medical expenses; $5,000.00 for past, present, and future disability and disfigurement; and $5,000.00 for past, present, and future loss of wages. On May 13, 1988, the trial court rendered judgment in favor of plaintiff and against defendants for $49,000.00, reduced by $29,400.00 representing plaintiff's proportionate fault.[3] On June 2, 1988, plaintiff filed a motion for new trial and/or additur, which was denied by the trial judge.
From the adverse judgment on the merits, plaintiff appeals, assigning the following errors:
1. Whether the Jury award for General damages is grossly inadequate and/or an abuse of the trial court/trier of facts discretion?
2. The Trier of Fact erred in reducing Plaintiff's award by sixty (60%) percent comparatively negligent.
3. The Trial Judge erred in refusing to charge the jury as to "The Agressor (sic) Doctrin (sic)" and/or the charges on a "Dangerous Instrumentality".

JURY INSTRUCTION
Plaintiff contends that the trial court erred in failing to give certain jury instructions to the jury. Plaintiff's proposed instructions concerned the aggressor doctrine and, particularly, defendant's use of a firearm and the duty of care which should have been placed upon him. Plaintiff reasons that, had the proposed instructions been given to the jury, the percentage of fault assessed against her would have been no more than twenty percent (20%).
Generally, the trial court is bound to instruct the jury only on the law which pertains to the evidence adduced in that particular case. Giarratano v. Krewe of Argus, Inc., 449 So.2d 530 (La.App. 5th Cir.1984), writ denied, 456 So.2d 170 (La. 1984). A charge to the jury, even if it is a correct statement of law, must be based on evidence adduced in the case in order for the jury to consider its application to facts of the case and arrive at the conclusion permitted in the charge. Hart v. Allstate Insurance Company, 426 So.2d 711 (La. App. 1st Cir.1982), modified on other grounds, 437 So.2d 823 (La.1983).
Under the law, an aggressor cannot recover for injuries suffered in an altercation, unless the injuries result from the use of excessive force to repel the aggression or the injuries are suffered after the aggressor has retired from the fray. Coleman v. Moore, 426 So.2d 652 (La.App. 1st Cir.1982), writs denied, 433 So.2d 149, 155 (La.1983).
In the instant case, the testimony of both plaintiff and defendant reveals that defendant did not use the handgun to repel an attack by plaintiff. Rather, the evidence unequivocally shows that the gun, which was in defendant's pocket, accidentally discharged as defendant attempted to remove his keys from his pocket. Clearly, the evidence adduced at trial did not support the application of the aggressor doctrine, and the trial judge correctly declined to instruct the jury regarding the aggressor doctrine.
Plaintiff further contends that the trial court erred in failing to charge the jury that under Louisiana law a duty of extraordinary care is placed on a person in *1207 control of a dangerous instrumentality such as a loaded gun. We agree. The law is clear that a loaded gun is a dangerous instrumentality and that a duty of extraordinary care is placed on those in control of such weapons. Cathey v. Bernard, 467 So.2d 9 (La.App. 1st Cir.1985); Valence v. State, 280 So.2d 651 (La.App. 1st Cir.1973), writ refused, 282 So.2d 517 (La.1973).
However, when all the facts are considered, namely, plaintiff knocking on defendant's window in the early morning hours, defendant not being aware of the identity or intention of the defendant, and the altercation subsequently ensuing, it was certainly not unreasonable for the defendant, under these circumstances, to have a loaded gun in his possession. The handgun was not used by defendant and its accidental discharge in defendant's pocket did not, under the peculiar circumstances of this case, increase the defendant's degree of culpability. Therefore, our independent review of the evidence convinces us that the error in failing to give this requested jury instruction was harmless.
This assignment of error lacks merit.

PERCENTAGE OF FAULT
Plaintiff contends that the trial court erred in finding her sixty percent (60%) at fault.
LSA-C.C. art. 2323 provides:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La. 1985), the Louisiana Supreme Court set forth guidelines for applying the mandate of LSA-C.C. art. 2323 as follows:
We recognize that a standard for determining percentages of fault has not been provided by the Legislature, and we are therefore presented with an opportunity to offer guidelines as we apportion fault in this instance. In so doing we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979), which incorporates direction for the trier of fact. Section 2(b) provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. (Footnotes omitted).
[469 So.2d 973-974]
In the instant case, plaintiff, in the early morning hours, went to her lover's home and discussed with him his activities with other women. Upon finding another woman present, plaintiff intentionally struck defendant with a mug. As defendant attempted to remove his keys from his pocket, defendant accidentally shot plaintiff when the firearm, located in his pocket, discharged. In apportioning the parties' relative degree of fault, after carefully weighing their conduct in light of the Watson factors, we find that the jury was not clearly wrong in finding plaintiff 60% at fault and defendant 40% at fault. We have reviewed the evidence and conclude that the jury made reasonable inferences of fact, which were not clearly wrong. This *1208 court has no basis for substituting a different view of the evidence and reallocating the percentages of fault determined by the trial court.
This assignment lacks merit.

QUANTUM
Plaintiff contends that the trial court erred in awarding damages. Plaintiff reasons that the $5,000.00 award for general damages is inadequate in light of the medical evidence presented.[4]
The injury sustained by plaintiff, who is right-handed, has left her with a dysfunctional right hand. Plaintiff testified that she underwent six surgeries and that she continues to experience problems with her hand. She also experiences problems lifting heavy objects or buttoning her blouse and has had to learn to utilize her left hand to write. Plaintiff testified that her injury was very painful and that the deformity to her hand is a source of embarrassment.
Dr. William H. Kinnard, a board certified orthopedic surgeon with the Houma Orthopedic Clinic testified on plaintiff's behalf. Dr. Kinnard first examined plaintiff on July 12, 1986, the night of the shooting, at the Terrebonne General Hospital emergency room for gunshot wounds to her right hand. At that time, plaintiff had marked swelling in her hand, and Dr. Kinnard noted entrance and exit wounds as well as decreased sensation in the index finger and thumb. Realizing that plaintiff would incur extensive medical expenses, which she could not afford, Dr. Kinnard arranged for plaintiff's transfer to South Louisiana Medical Center, where she underwent treatment for several months, including debridement of her second and third fingers and a bone graft on her second finger.
On November 25, 1986, plaintiff was examined by Dr. Richard Landry, another orthopedic surgeon with the Houma Orthopedic Clinic. At that time, plaintiff complained of an inability to flex or bend her index finger and an inability to abduct her thumb. X-rays revealed a markedly shortened index finger and thumb, poor healing of the middle finger, and malalignment of the index and middle fingers. The malalignment caused plaintiff's fingers to overlap, resulting in a dysfunctional ability to grasp. Physical examination revealed stiffness in the knuckle of the index finger and numbness in the thumb, indicating nerve injury.
During her course of treatment at the Houma Orthopedic Clinic, plaintiff underwent four additional surgeries (including an index finger amputation), the last of which was performed on November 19, 1987. Dr. Kinnard noted that plaintiff will have to undergo further surgeries, including one to lengthen her thumb. Dr. Kinnard determined that plaintiff sustained a 50% permanent disability to her hand as a result of the gunshot wound inflicted by defendant.
In assessing general damages, the jury awarded plaintiff $5,000.00 for past, present, and future disability and disfigurement and awarded plaintiff nothing for past, present, and future physical pain and suffering and mental pain and anguish.
In reviewing damage awards, an appellate court may disturb an award made by the trial court when the record reflects that the trier of fact abused its discretion in making the award. Emerson v. Empire Fire and Marine Insurance Company, 393 So.2d 691 (La.1981). There is no mechanical rule for determining general damages and the facts and circumstances of each case must control. An appellate court cannot alter the judgment of the trier of fact unless first being able to articulate, from the record, that the trier of fact has abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); French Jordan, Inc. v. Oilfield Sales and Services, Inc., 439 So.2d 523 (La.App. 1st Cir.1983). If an appellate court determines from the record that the trier of fact has abused its much discretion, then the court may only *1209 raise a general damage award to the lowest level a reasonable trier of fact could have awarded. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the instant case, we find that the jury abused its discretion in making the general damage award. The evidence presented clearly shows that plaintiff received a gunshot wound to her right hand, which, to date, required six surgical procedures, for which the medical expenses exceeded $39,000.00. Additionally, plaintiff suffered from pain for the almost two-year period between the date of the incident and trial. Furthermore, the uncontroverted medical evidence established that plaintiff has a 50% permanent disability of her dominant hand and that at least one future surgery is anticipated.
After considering all of the above, we find that the lowest general damage award a reasonable trier of fact could have awarded was $50,000.00.

CONCLUSION
For the above reasons, the trial court judgment awarding plaintiff $5,000.00 for general damages is amended to $50,000.00, reduced by plaintiff's percentage of fault, plus legal interest from date of judicial demand. In all other respects, the judgment of the trial court is affirmed. Defendants are cast for all costs.
AMENDED IN PART, AND AFFIRMED AS AMENDED.
Before CARTER, SAVOIE and ALFORD, JJ.

ON APPLICATION FOR REHEARING
Rehearing Granted as follows:
The evidence shows that the defendant had keys and a handgun in his pocket. To remove the keys, the handgun also had to be removed. At some period after the handgun was removed or in the act of removing the handgun, it accidentally discharged while in defendant's hand.
The prior decision of this court is affirmed.
NOTES
[1] Defendant's wife was not at home on that date as she was spending the week visiting friends in another city.
[2] Plaintiff contends that defendant struck her with his fist, and defendant denies striking plaintiff.
[3] Thereafter, defendants filed a rule to tender payment of judgment, which was granted by the trial judge. Plaintiff subsequently withdrew the funds, representing $19,600.00 plus interest from date of judicial demand.
[4] The jury awarded plaintiff $39,000.00 for past, present, and future medical expenses; $5,000.00 for past, present, and future disability and disfigurement; and $5,000.00 for past, present, and future loss of wages. Plaintiff has only appealed the award for general damages; therefore, the issue of the damage award for medical expenses and lost wages is not before us.