SHORTESS, Judge.
Defendants, the State of Louisiana, through the Office of the Fire Marshall and Deputy Fire Marshall, and Emerson Wilkerson, appeal a judgment in favor of plaintiffs, Mark J. Lamartiniere and Rita B. Lamartiniere in the amount of $2,500' for invasion of privacy.
The trial court made extensive factual findings in this ease, which are essentially undisputed, and which we adopt as our own.
In November of 1977, a fire destroyed the residence of plaintiffs, Mark and Rita Lamartiniere. At the time the fire occurred, plaintiffs were at a hunting camp some distance from their home. When they returned on Sunday of that weekend, they found their home seriously damaged by fire.
Emerson G. Wilkerson, who was employed at the time by the State Fire Marshall’s Office, was contacted subsequent to the fire by a deputy with the Tangipahoa Parish Sheriff’s Office, who stated that the Hammond Fire Department had requested his assistance in investigating the Lamartiniere fire. Wilkerson went to the site and made some investigation. He observed empty five-gallon plastic containers with an odor of gasoline and other substances in the vicinity of the Lamartiniere house, and felt that there had been some explosion of combustible materials. Wilkerson concluded that the fire was of incendiary origin.
*1159 Prior to the fire, the Lamartinieres had been attempting to sell this residence, and had it listed with a local real estate agent. Coincidentally, Wilkerson had himself been shopping for a new home, and on October 13, 1977, had inspected the Lamartiniere home as a potential purchaser. At that time, Wilkerson testified that he had observed that the house was well furnished, in fact, crowded with furniture, and that the house had many Spanish style furnishings. Also, the garage at that time had a number of items including motorcycles on this visit.
When he first inspected the remains of the home after the fire, Wilkerson observed that the foyer, hall and master bedroom were devoid of furniture, and that the garage was empty. He testified that the fire had started in the attic, and had not burned down to the floor level by the time it was put out, so that, in his opinion, it would not have consumed furnishings situated on the ground floor. Based on these observations, Wilkerson obviously harbored some suspicions that plaintiffs were responsible for the fire.
Subsequently, Wilkerson began working with Samuel Robertson, a claims adjuster for Allstate Insurance Company, which insured plaintiffs’ residence. Plaintiffs were advised that the fire was being investigated. There was also testimony that Robertson had plaintiffs’ permission to search for any “missing furniture[.”] Further in connection with the investigation and the fire claim, plaintiffs ultimately submitted a proof of loss form as to the contents of their dwelling. There was testimony that plaintiffs thought the proof of loss was to include everything they owned — not just what was lost in the fire. Plaintiffs also denied having moved any of the contents out of the house prior to the fire, although a second statement by plaintiffs modified this position to one stating that they had not moved any furnishings out of the house prior to the fire.
Based on their suspicions, Robertson and Wilkerson began checking with various storage warehouse facilities in the area. Ultimately, they located a “mini warehouse’ storage facility which had been rented by plaintiffs on October 10, 1977, approximately six weeks prior to the fire. This mini warehouse was locked, and only plaintiffs had keys to the locks. However, the attendant at the storage facility advised Wilkerson and Robertson that the adjacent warehouse was vacant, and supplied a stepladder. There was a narrow open space between the top of the wall separating the vacant warehouse from the warehouse rented by the Lamartinieres. Wilkerson climbed the stepladder and looked over the top of the wall. He stated that he observed some items such as pictures and trophies which he had previously seen in plaintiffs’ house when he visited it as a prospective buyer.
These observations were communicated to Deputy Bigner with the Tangipa-hoa Parish Sheriff’s Office who was apparently the local liaison in the investigation. Thereafter, Deputy Bigner obtained a search warrant for the mini warehouse.
Mrs. Lamartiniere testified that she received a call from Wilkerson and Bigner advising her that they had a warrant to search the mini warehouse. She went to the facility and opened the door for them. She had left word at the day care center where she was working for her husband to come to the storage center, and he arrived some time thereafter, during the course of the search. He was advised by the deputy sheriff to come to the courthouse for questioning, and he was thereafter charged with arson and placed in jail. This occurred on December 22, 1977. Lamartiniere’s brother-in-law posted his bond, and he was released from custody at some point thereafter. He and his wife testified that this thoroughly embarrassed and humiliated them, and disrupted their Christmas vacation.
Mr. Lamartiniere was employed by Union Carbide Corporation. When the search warrant was executed, some tools bearing an inscription “UCC” were discovered. Someone (apparently not Wilk *1160 erson or Robertson) contacted Union Carbide, which apparently concluded that the tools had been stolen. Mr. Lamarti-niere testified that he had purchased the tools at a “scrap sale” by which Union Carbide apparently sold old or unneeded equipment to employees, but Lamartini-ere had no proof of such purchase. He was thereafter discharged from his employment, according to a document admitted into evidence “... effective January 27,1978, because of the unauthorized possession of Union Carbide material with no satisfactory explanation.” Mr. Lamartiniere’s explanation for not relating the circumstances of the “scrap tool sale” to Union Carbide is that by this time he was being prosecuted criminally and had been advised by his attorney not to speak about the charges.
Plaintiffs instituted this suit on a number of bases. Allstate Insurance Company and Samuel Robertson were ultimately dismissed from the action, and the suit was maintained as against Emerson G. Wilkerson and the State of Louisiana through the Office of the State Fire Marshall. Although a number of grounds are alleged in the petition, plaintiffs’ primary contentions are that these defendants are answerable to them in damages under the theory of invasion of privacy, and further for damages for his loss of income due to his discharge from Union Carbide.
Criminal charges were filed against Mark J. Lamartiniere pursuant to the investigation and the evidence seized in the search of the mini warehouse. Ultimately, in those proceedings, a motion to suppress the evidence seized was upheld by the Louisiana Supreme Court (State v. Lamartiniere, 3[6]2 So.2d 526 (La.1978)).”
The trial court found as a matter of law plaintiffs were entitled to recover only for the initial “peeking” over the wall. Because Wilkerson merely turned over the information to the Tangipahoa Sheriffs Office and because the Sheriff’s department made its own inspection of the mini warehouse, peeking over the connecting wall before obtaining a search warrant and arresting Lamartiniere, the trial court reasoned that the Sheriff’s involvement was a superseding intervening cause. Consequently, the trial court held the defendants liable for the initial peeking over the wall and not for the ultimate results for which plaintiffs claim damages. Specifically, the trial court refused to award plaintiffs for damages resulting from Mark Larmartini-ere’s arrest, such as loss of income and damage to their reputation.
Plaintiffs did not appeal the judgment or file an answer to the appeal taken by defendant. Therefore, this aspect of the judgment is final. LSA-C.C.P. art. 2133; Succession of Brown, 468 So.2d 794 (La.App. 1st Cir.1985).
In Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081, 1093 (La.1990), the supreme court stated that damages are awardable to an individual for injuries or loss caused by this type of privacy invasion. 567 So.2d at 1093. In Slocum v. Sears Roebuck & Co., 542 So.2d 777 (La.App. 3 Cir.1989), the Third Circuit Court of Appeal held that in an invasion of privacy suit plaintiff must show actual damages. The court in Slocum, at page 779, quoted with approval United Pentecostal Church v. Interstate Surplus Underwriters, 368 So.2d 1104, at page 1109:
Fault alone does not produce recovery. It is the fault which causes some damage that produces recovery or reparation for the damage under CC 2315. When this cause in fact element is not proved, even though the negligence or fault is proved, recovery of damages is not allowed.
See also, Martin v. New Orleans Public Service, 590 So.2d 118 (La.App. 5th Cir.1991), where the fifth circuit held that in a malicious prosecution case plaintiff must show actual damages. The record contains no evidence that plaintiffs suffered damages from Wilkerson “peeking” over the wall of the mini warehouse.
Accordingly, based on the foregoing reasons, the decision of the trial court casting Wilkerson with damages is reversed, and the judgment against him and the State of *1161 Louisiana is dismissed with prejudice at plaintiffs’ costs.
REVERSED AND RENDERED.
LANIER, J., concurs in the result and assigns reasons.